STATE of Minnesota, Appellant,

v.

Eric NMN SMITH, Respondent.

No. C3–02–96.

Supreme Court of Minnesota.

Feb. 12, 2004.

Mike Hatch, Minnesota Attorney General, Amy Klobuchar, Hennepin County Attorney, St. Paul, MN, David C. Brown, Assistant County Attorney, Minneapolis, MN, for Appellant.

John M. Stuart, Minnesota State Public Defender, Sara Lynne Martin, Assistant State Public Defender, Minneapolis, MN, for Respondent.

## OPINION

BLATZ, Chief Justice.

Appellant, State of Minnesota, appeals from the court of appeals decision, which granted Eric Smith, defendant and respondent, a new trial because the trial court's jury instructions diluted the reasonable doubt standard. We reverse.

On July 14, 2001, two Minneapolis police officers patrolling in a marked squad car spotted Smith driving a blue Chevrolet Blazer bearing the license plate number of a vehicle that had been reported to the Minneapolis Police Department as stolen. The officers testified that they never lost sight of the vehicle and pursued the vehicle until it pulled over to the side of the street. The police stopped behind the alleged stolen vehicle with emergency lights activated. After Smith parked the Blazer, the officers witnessed Smith exit the vehicle from the driver's door and approach the police car. The officers apprehended Smith shortly thereafter and later testified that Smith was the driver and lone occupant of the vehicle.

At trial, Smith's version of the events differed substantially from the account given by the police officers. Smith testified that while sitting on his aunt's front porch he witnessed a blue Chevrolet Blazer speed up the street and park in front of his aunt's house. The vehicle's two occupants quickly exited the vehicle and fled in opposite directions. Smith walked over to the vehicle and looked inside where he noticed that the plastic casing surrounding the steering column had been chipped away. Suspicious that the vehicle was stolen, Smith decided that he should contact the police department. At that moment, a police squad car came to a stop behind the stolen vehicle. Smith approached the police officers to discuss the events he had witnessed moments earlier. After brief questioning by the police, Smith was arrested and charged with theft of a motor vehicle under Minn.Stat. § 609.52, subd.

2(17) (2000).[1]

On September 26, 2001, a jury convicted Smith of both crimes. Smith appealed the convictions on five separate grounds: 1) that the trial court's jury instruction on reasonable doubt, which departed from the model jury instruction, diluted the state's burden of proof; 2) that the trial court should have suppressed evidence as a discovery sanction; 3) that the state committed a *Brady* violation; 4) that a juror should have been removed for cause; and 5) that the trial court erred in sentencing Smith as a career offender. *State v. Smith*, 655 N.W.2d 347, 351–52 (Minn.App. 2003). Of the five issues raised on appeal, the court of appeals rejected 2) through 5) listed above, but reversed and remanded on the first issue. *Id.* at 353–56. The court of appeals concluded that the trial court's jury instruction diluted the reasonable doubt standard and, therefore, granted Smith a new trial. The state asks this court to reverse the court of appeals' decision and reinstate the convictions of auto theft and receiving stolen property.

■ The reasonable doubt standard is the cornerstone of our criminal justice system. "The standard provides concrete substance for the presumption of innocence—that bedrock axiomatic and elementary principle whose enforcement lies at the foundation of the administration of our criminal law." *In re Winship*, 397 U.S. 358, 363, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (internal quotations omitted). Although the United States Constitution requires that a defendant's guilt be proved beyond a reasonable doubt, trial courts are not bound to use any particular form of words to define the government's burden of proof as long as, taken as a whole, the concept of reasonable doubt is correctly conveyed to the jury. *Victor v. Nebraska*, 511 U.S. 1, 5, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994). The United States Supreme Court has held that the proper inquiry into the reasonable doubt jury instruction asks if the jury was reasonably likely to apply the instruction in an unconstitutional manner, not whether the jury could have applied the instruction in an unconstitutional manner. *Estelle v. McGuire*, 502 U.S. 62, 72 n. 4, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).

■ Minnesota courts have adopted a similar approach to analyzing jury instructions and, in particular, the reasonable doubt jury instruction. *State v. Moorman*, 505 N.W.2d 593, 604–05 n. 6 (Minn.1993) (citing *Estelle*, 502 U.S. at 72 n. 4). Minnesota trial courts are afforded broad discretion and considerable latitude in choosing the language of jury instructions. *Hilligoss v. Cargill Inc.*, 649 N.W.2d 142, 147 (Minn.2002); *State v. Gray*, 456 N.W.2d 251, 258 (Minn.1990). Instructions must be viewed in their entirety to determine whether they fairly and adequately explain the law of the case. *State v. Flores*, 418 N.W.2d 150, 155 (Minn.1988). We will review the unobjected to jury instructions for plain error. *State v. Griller*, 583 N.W.2d 736, 740 (Minn.1998).

■ Here, the trial court first instructed on the presumption of innocence. It then supplied the jury with a description of the reasonable doubt standard that departed, in part, from the exact wording of the reasonable doubt instruction provided in the Criminal Jury Instruction Guide 3.03, an articulation of the reasonable doubt standard that is recognized by Minnesota courts. 10 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction*

---

**1.** The complaint was later amended to include a count of receiving stolen property under Minn.Stat. § 609.53, subd. 1 (2000).

*Guides, Criminal,* CRIMJIG 3.03 (4th ed.1999) (hereinafter CRIMJIG); *State v. Sessions,* 621 N.W.2d 751 (Minn.2001). The standard CRIMJIG 3.03 from which the trial court departed provides:

> Proof beyond a reasonable doubt is such proof as ordinarily prudent men and women would act upon in their most important affairs. A reasonable doubt is a doubt based upon reason and common sense. It does not mean a fanciful or capricious doubt, nor does it mean beyond all possibility of doubt.

 Although courts may favor the use of CRIMJIGs, their use is not mandatory. *Flores,* 418 N.W.2d at 156 (stating that although it may have been preferable for the trial court to use the words of a CRIMJIG, the instruction fairly and adequately explained the law and was not error). Here, the trial court gave the jury the following reasonable doubt instruction:

> Proof beyond a reasonable doubt is simply that amount of proof that ordinary men and women rely upon in making their own most important decisions. You have a reasonable doubt if your doubts are based upon reason and common sense. You do not have a reasonable doubt if your doubts are based upon speculation or irrelevant details.

At trial, Smith did not object to the trial court's instruction on the reasonable doubt standard. Instead, he raised the issue in a post-trial motion stating that the jury instruction diluted the reasonable doubt standard and, therefore, a new trial was necessary. The court denied the motion and Smith appealed to the court of appeals.

 Reversing the trial court's decision, the court of appeals focused primarily on

the language, "You do not have a reasonable doubt if your doubts are based upon speculation* * *."[2] *Smith,* 655 N.W.2d at 352–53. Turning to the language "fanciful and capricious" set forth in the standard CRIMJIG 3.03, the court of appeals compared the dictionary definitions of fanciful and capricious with the dictionary definition of speculation and concluded that substituting "speculation" for "fanciful and capricious" allowed the defendant to be convicted under a less stringent standard than that required by due process. *Id.* at 353. Specifically, the court reasoned that defining reasonable doubt to exclude doubts based on "speculation" diluted the reasonable doubt standard because some speculation by the jury is reasonable. *Id.* Therefore, in the court's view, asking the fact-finder to disregard reasonable speculation impermissibly narrowed the standard and allowed Smith to be convicted more easily. *Id.*

 As noted above, Smith did not object to the jury instruction on reasonable doubt before the jury was instructed. When the defendant fails to object, the court will review the given jury instruction to determine if it constituted plain error. *Griller,* 583 N.W.2d at 740. Plain error analysis involves a three-prong test, which requires: (1) an error; (2) that is plain; and (3) affects substantial rights. *Id.* at 740. Each prong of the plain error test must be satisfied in order for the error to be corrected. *Id.* (quoting *Johnson v. United States,* 520 U.S. 461, 466–67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)).

 The first prong of the plain error test requires the existence of an error. On review of trial court instructions, it is error if the instructions confuse, mislead,

---

**2.** The court of appeals also considered and rejected Smith's argument that the use of the word "simply" in the jury instruction diluted

the reasonable doubt standard. *Smith,* 655 N.W.2d at 353. We agree with the court of appeals.

or materially misstate the law. *State v. Gutierrez,* 667 N.W.2d 426, 434 (Minn. 2003). We analyze the trial court's instructions with the understanding that trial courts possess significant discretion in the selection of instruction language and that instructions must be read as a whole to determine whether they accurately describe the law. *Hilligoss,* 649 N.W.2d at 147; *Flores,* 418 N.W.2d at 155.

 Reading the instructions in their entirety and in the context of the presumption of innocence leaves little room for misunderstanding. The trial court began its instruction to the jury by emphasizing the importance of two principles— the presumption of innocence and the concept of proof beyond a reasonable doubt. The trial court's remarks on the presumption of innocence proceeded as follows:

> The defendant is presumed innocent of the charge. That presumption of innocence remains with the defendant unless and until he has been proved guilty beyond a reasonable doubt. The fact that the defendant is on trial, has been arrested or has been brought before the Court by the ordinary processes of the law should not be considered by you as evidence in this case or in any way suggesting guilt.
>
> The burden of proving guilt is on the State of Minnesota. The defendant does not have to prove his innocence.

The presumption of innocence instruction was followed by several paragraphs of instruction concerning the concept of reasonable doubt. With respect to the theft of a motor vehicle charge, the court gave the following instruction:

> If you find that each of these elements has been proven beyond a reasonable doubt, you must find the defendant guilty of the crime of theft of a motor vehicle. If you find that any element has not been proven beyond a reasonable doubt, you must find the defendant not guilty of theft of a motor vehicle.

The court gave an identical instruction with respect to the receiving stolen property charge, then explained the concept of reasonable doubt with the following instruction:

> The law requires the State to prove its case beyond a reasonable doubt. It does not require the case to be proved beyond all possibility of doubt, nor does it require that the case be proved to a mathematical certainty.
>
> Proof beyond a reasonable doubt is simply that amount of proof that ordinary men and women rely upon in making their own most important decisions. You have a reasonable doubt if your doubts are based upon reason and common sense. *You do not have a reasonable doubt if your doubts are based upon speculation or irrelevant details.*

(emphasis added). Smith argues, and the court of appeals agreed, that including the word "speculation" in the trial court's definition of reasonable doubt impermissibly diluted the reasonable doubt standard and rendered the entire jury instruction erroneous. *Smith,* 655 N.W.2d at 353. In contrast, the state contends that Smith's argument and the court of appeals' reasoning impermissibly focus upon the word "speculation" in isolation and fail to read the instructions as a whole.[3] Because ju-

---

**3.** In addition to the state's contention that the court of appeals failed to read the instructions as a whole, the state challenges the court of appeals' decision on the grounds that the court considered how a jury "could have" applied the instruction, rather than how the jury was "reasonably likely" to apply the instruction. The state argues that utilizing a "could have" test caused the court to consider all possible dictionary definitions of the word speculate and make guesses as to how a jury might apply them. Although it is unclear

rors do not engage in "technical hairsplitting" of individual words the way lawyers do, a juror's understanding of words is considered in light of the context in which the word is received. *Boyde v. California,* 494 U.S. 370, 380–81, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990).

In our view, the instructions read as a whole conceptualize reasonable doubt in five different ways: 1) reasonable doubt does not require the case to be proved beyond all possibility of doubt; 2) reasonable doubt does not require the case to be proved to a mathematical certainty; 3) reasonable doubt is the amount of proof that ordinary men and women rely upon in making their own most important decisions; 4) reasonable doubt is based on reason and common sense; and 5) reasonable doubt is not based on speculation and irrelevant details. Thus, the word "speculation" cannot be viewed by itself, but must be read in context and in tandem with the words "irrelevant details," the words with which speculation is coupled. Further, the word "speculation" must be viewed within the broader scheme of the instructions, i.e., the trial court's other descriptions of reasonable doubt as well as the presumption of innocence. When the word "speculation" is read in this context, we are satisfied that its inclusion does not impermissibly narrow the reasonable doubt standard

nor mislead, confuse, or misstate the law.[4] While modifications or departures from the CRIMJIGS in criminal cases must be done with considerable care so as not to impair fundamental principles of law, we conclude that the trial court's instruction on reasonable doubt did not constitute plain error.

Reversed.

which test the court of appeals applied, Smith concedes, and we agree, that the "reasonable likelihood" test is the proper standard of review for this appeal.

4. Two other courts have upheld reasonable doubt instructions containing the word "speculation." In *United States v. Edelin,* 996 F.2d 1238 (D.C.Cir.1993), the court held that defining reasonable doubt to exclude speculation did not impermissibly narrow the reasonable doubt standard stating, "[W]e have recognized that appellate courts' picking over every possible nuance of an instruction * * * is likely to drive district courts into a ritualistic recital of canned language that numbs the

jury." *Id.* at 1242 (internal quotation omitted). In *Johnson v. Alabama,* 256 F.3d 1156 (11th Cir.2001), the defendant argued that the phrases "moral certainty" and "actual and substantial doubt" impermissibly lowered the state's burden of proof. *Id.* at 1191 In upholding the trial court's instruction, the circuit court relied on the word "speculation" to provide context and ultimately save the challenged portions of the reasonable doubt instruction. The court held that contrasting "actual and substantial doubt" with "speculation and guesswork" made the reasonable doubt standard clear to the jury. *Id.* at 1193–94, nn. 23, 24.