STATE of Minnesota, Respondent,

v.

Brett Arnold LAINE, Appellant.

No. A03–1551.

Supreme Court of Minnesota.

June 8, 2006.

Craig E. Cascarano, Cascarano Law Office, Minneapolis, MN, Jennifer M. Macaulay, Macaulay Law Offices, St. Paul, MN, for Appellant.

Mike Hatch, Attorney General, John B. Galus, Assistant Attorney General, St. Paul, MN, Alan L. Mitchell, St. Louis County Attorney, Duluth, MN, for Respondent.

## OPINION

ANDERSON, G. BARRY, Justice.

Brett Arnold Laine appeals from his conviction of first-degree domestic abuse murder. Laine requests a reversal of his conviction based on insufficient evidence. In the alternative, alleging error on several grounds, Laine seeks a new trial. Because sufficient evidence sustains the murder conviction and there is no error warranting a new trial, we affirm.

This direct appeal arises out of the death of Laine's girlfriend, Nancy Jagunich. Around 3:20 a.m. on October 1, 2001, Laine called 911 and reported that his girlfriend had fallen down the stairs and was not breathing. Emergency responders were unable to resuscitate Jagunich, and she was pronounced dead at approximately 4:00 a.m. Laine told responding officers that Jagunich had fallen around 1:00 a.m. and had not regained consciousness after her fall. He denied that he and Jagunich had any arguments that night. Laine told officers that after Jagunich fell he took her to the lower level of the home, undressed Jagunich and himself, and laundered both sets of clothes. He also cleaned the blood from the landing at the bottom of the stairs. He told officers that when Jagunich developed breathing difficulties he called his mother, who lived nearby, and then called for an ambulance. Officers noticed red stains, Jagunich's glasses, and what appeared to be multiple strands of human hair in the upper level of the home, but Laine told them that he had not brought Jagunich upstairs after her fall. When asked about the cause of lacerations and bruising on Jagunich's face, Laine told officers the injuries were a result of the fall. Officers noticed a cut across the bridge of Laine's nose; Laine claimed that he had received that cut the day before while riding his all-terrain vehicle.

At trial, in addition to presenting testimony regarding Laine's statements to police and the sequence of events after Jagunich's death, the state presented medical expert testimony concerning Jagunich's injuries and the cause of her death. The medical examiner testified that the pattern of injuries on Jagunich's face and the presence of injuries on more than one surface of her body were not consistent with a fall down the stairs. He found bruising on Jagunich's face, legs, neck, and arms as well as hemorrhaging in her lower back and buttock area. With few exceptions, the bruises and hemorrhages appeared to be the result of trauma sustained only three or four hours before death. He testified that certain bruises were very suggestive of someone forcefully gripping Jagunich, and other bruises appeared consistent with defensive injuries received while Jagunich attempted to protect herself from an assault.

The medical examiner testified that Jagunich died from significant hemorrhaging as a result of multiple areas of blunt trauma to the head. He observed multiple areas of blunt trauma to Jagunich's head, as well as hemorrhaging within the brain stem itself. He testified that such hemorrhaging in this area of the brain indicated the hemorrhaging was the result of a rotational injury in which Jagunich's head was moved forcefully to one side. He opined that Jagunich's fatal injuries could not have been caused by a fall down the stairs in question because there were "too many severe traumas coming from too many directions." He further testified that Jagunich's fatal injuries were the type of injuries a person could inflict with a "fist and/or forearm."

The state presented various pieces of physical evidence in an effort to undercut Laine's version of the sequence of events surrounding Jagunich's death. An agent with the Minnesota Bureau of Criminal Apprehension testified that the physical evidence at the scene indicated that trauma occurred in at least two locations of the home—the living room in the upper level of the house and the landing at the base of the stairs in question. He based this conclusion on bloodstains found in the landing area and on bloodstains and human hair found in the living room. An expert testified that the hair found in the living room matched Jagunich's DNA profile and he

opined that all the hair samples he examined had been forcibly removed from Jagunich's head. The bloodstains in the landing area either matched Jagunich's DNA profile or contained a mixture of profiles from which Laine could not be eliminated as a contributor. Of the bloodstains in the living room, one matched Jagunich's DNA profile, and the others contained a mixture of profiles from which neither Laine nor Jagunich could be eliminated as a contributor. Blood containing a mixture of DNA profiles was also found under Jagunich's fingernails. Laine could not be eliminated as a contributor to these mixtures. In addition to blood and hair, Jagunich's glasses, which were bent out of alignment, and a woman's brassiere were found on the upstairs level of the home.

To establish Laine's past pattern of domestic abuse, the state presented the testimony of both of Laine's ex-wives as well as Jagunich's friends and coworkers. Both of Laine's ex-wives testified that he had violently attacked them during their marriages. Laine's first wife testified that, on one occasion, Laine had threatened to kill her, thrown her around the living room, and pinned her head against a cement wall with his forearm. She further testified that he had physically abused her on other occasions as well. Laine's second wife testified that Laine assaulted her on many occasions during their marriage. On one occasion, he beat her with her high heel shoe. On another, Laine picked up the barstool on which she was sitting and slammed her and the barstool to the floor. As a result of this latter incident, Laine pleaded guilty to assault.

While no witness actually observed Laine assault Jagunich, her coworkers testified that they had observed bruises on Jagunich during the time Jagunich was in a relationship with Laine. When asked about the bruises, Jagunich stated that they resulted from physical fights with Laine and asked her coworkers not to tell anyone about the bruises.[1] Near the end of September 2001, Jagunich told one of her coworkers that she intended to break up with Laine. When the coworker told her that she herself had been in a violent relationship in the past and that such relationships "don't end until you're dead" Jagunich responded by saying that she had good life insurance.

At trial, Laine testified on his own behalf. He admitted that his first marriage was "stormy" but denied physically assaulting his first wife. He testified that he had pleaded guilty to assaulting his second wife because he was in fact guilty. Laine testified that in September of 2001 his relationship with Jagunich was going well and that she spent most of the last week of that month visiting him. The day before Jagunich's death, Laine testified that he and Jagunich went for a ride on his all-terrain vehicle and visited his mother. After returning to his house, Laine began "nagging" Jagunich because she was not helping him cook dinner. Laine testified that Jagunich was complaining of a headache and told him she had taken Benadryl. He also testified that in the past Jagunich had become faint as a result of taking Benadryl and other sinus medication. According to Laine, Jagunich tired of listening to his nagging, announced she was driving home, and began walking toward the stairs. Laine testified that he "grabbed onto her," and, with Jagunich resisting him, pulled her back to the loveseat and told her she should not drive because of the side effects of the medi-

---

1. While Laine's trial counsel objected to the admission of hearsay statements made by Jagunich, Laine does not argue on appeal that these statements were inadmissible on hearsay grounds.

cation. Laine stated that he soon began "nagging" Jagunich again to help him with dinner and that Jagunich ran for the stairs. Laine pursued her and grabbed her arms but lost his grip and she fell down the stairs. Laine testified that, after realizing Jagunich was unconscious, he carried her downstairs, cleaned her up, laundered both sets of clothing, and laid her on the downstairs bed. After a couple of hours, realizing her condition was worsening, he called his mother and then called for an ambulance. He admitted lying to police when they asked if he had argued with Jagunich, but said that he had done so because he was scared he would be implicated in her death.

In addition to his own testimony, Laine presented testimony from family and friends about the good state of his relationship with Jagunich and about Laine's compulsive need to clean his surroundings. He also presented testimony indicating flaws in the police investigation and suggesting that Jagunich may have had an ongoing relationship with another man in the two months preceding her death.

Laine was convicted of first-degree domestic abuse murder and acquitted of second-degree intentional murder, second-degree felony murder, first-degree manslaughter, and second-degree manslaughter. He was sentenced to life imprisonment. Laine directly appealed his conviction to this court, and we later granted Laine's motion to stay his direct appeal while he pursued postconviction relief. After the postconviction court denied Laine's petition for postconviction relief without an evidentiary hearing, we granted Laine's motion to lift the stay on his direct appeal.

Laine raises the following six issues on appeal:

1. Was the evidence sufficient to support Laine's conviction of first-degree domestic abuse murder?

2. Did the district court's jury instruction regarding the state's burden of proof on the "past pattern of domestic abuse" element of first-degree domestic abuse murder constitute plain error requiring a new trial?

3. Did the district court commit reversible error when it denied Laine's motion to bifurcate the trial so that the jury would not hear any evidence of a past pattern of domestic abuse until and unless the jury found the other elements of first-degree domestic abuse murder beyond a reasonable doubt?

4. Did the district court's cautionary instruction concerning the limited purpose of evidence of past domestic abuse constitute plain error requiring a new trial?

5. Did the district court commit reversible error in the manner in which it answered the jury's question about lesser-included offenses?

6. Were the jury verdicts legally inconsistent?

## I.

When reviewing the sufficiency of evidence, we inquire "whether, given the facts in the record and any legitimate inferences that can be drawn from those facts, a jury could reasonably find that the defendant was guilty of the charged offense." *State v. Pierson*, 530 N.W.2d 784, 787 (Minn.1995). We view the evidence in the light most favorable to the verdict. *State v. Moore*, 438 N.W.2d 101, 108 (Minn.1989). A conviction based on circumstantial evidence will stand only if the circumstantial evidence forms "a complete chain which, in light of the evidence as a whole, leads so directly to the guilt of the accused as to exclude, beyond a reasonable

doubt, any reasonable inference other than that of guilt." *State v. Leake,* 699 N.W.2d 312, 319–20 (Minn.2005) (internal quotation marks omitted). When applying this standard, however, "it remains the province of the jury to determine the credibility and weight of the circumstantial evidence and we will continue to assume the jury believed the state's witnesses and disbelieved the defendant's witnesses." *State v. Bolstad,* 686 N.W.2d 531, 539 (Minn.2004).

To convict Laine of first-degree domestic abuse murder, the state must prove that Laine: (1) caused the death of Jagunich, (2) that Jagunich's death occurred while Laine was committing domestic abuse, (3) that Laine had engaged in a past pattern of domestic abuse upon Jagunich or upon another family or household member, and (4) Jagunich's death occurred "under circumstances manifesting an extreme indifference to human life." *See* Minn.Stat. § 609.185(a)(6) (2004). Laine appears to argue that the state failed its burden of proof on the first, second, and fourth elements.[2]

Viewing the evidence in the light most favorable to the verdict, there is strong evidence supporting the verdict. While Laine argues there is "insufficient proof" that he caused Jagunich's death, the testimony of the medical examiner demonstrates otherwise. The medical examiner testified that the cause of Jagunich's death was multiple blunt traumas to the head

that cumulatively caused her death. He further testified that this trauma was a type of injury that could be inflicted by a person's fist or forearm. While he admitted on cross examination that a fall down the stairs in question could cause head trauma, the medical examiner opined that Jagunich's fatal injuries could not have been caused by such a fall because of the number of severe traumas present and the number of directions from which these traumas were inflicted. In addition, the evidence, including Laine's testimony, showed that Laine was alone with Jagunich at the time she was injured. Given this evidence and given that Laine does not dispute the evidence that Jagunich was a "family or household member,"[3] the circumstantial evidence excludes, beyond a reasonable doubt, any reasonable inference other than that Laine caused Jagunich's death while committing domestic abuse and that Jagunich's death occurred under circumstances manifesting an extreme indifference to human life. Therefore, sufficient evidence supports Laine's conviction.

## II.

 The next issue raised by Laine is whether he is entitled to a new trial based on the district court's instruction to the jury concerning the state's burden of proof on the "past pattern of domestic abuse" element of first-degree domestic abuse murder. Laine argues that we should reexamine our prior holdings and hold that

---

**2.** While Laine does not appear to directly challenge the sufficiency of evidence establishing that Laine had engaged in a past pattern of domestic abuse upon Jagunich or upon another family or household member, sufficient evidence supports the jury's finding on this element.

**3.** For the purposes of Minn.Stat. § 609.185(a)(6), an act is only considered "domestic abuse" when it is committed against a victim who is a "family or house-

hold member" as defined in Minn.Stat. § 518B.01, subd. 2(b) (2004). Minn.Stat. § 609.185(c)(2) (2004). "[P]ersons involved in a significant romantic or sexual relationship" are "family or household members." Minn.Stat. § 518B.01, subd. 2(b). At trial, evidence (including Laine's testimony) was introduced which would support a jury finding that the relationship between Jagunich and Laine met the requirements of section 518B.01, subd. 2(b). Laine does not dispute the sufficiency of the evidence on this ground.

an instruction that does not require the state to prove each incident of prior domestic abuse beyond a reasonable doubt is erroneous. The state argues that there is no reason to overturn this court's precedent on this issue and that Laine is not entitled to a new trial because he cannot establish plain error.

■■■■■■ Laine acknowledges that he did not object to this aspect of the jury instructions at trial. "Failure to object to jury instructions generally results in a waiver of the issue on appeal." *State v. Earl*, 702 N.W.2d 711, 720 (Minn.2005). Even in the absence of objection at trial, however, we have discretion to review a claim of error on appeal if the jury instructions contain plain error affecting substantial rights or an error of fundamental law. *State v. Crowsbreast*, 629 N.W.2d 433, 437 (Minn.2001). Such errors may be addressed on appeal if there was (1) error, (2) that is plain, and (3) affects substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn.1998). If the error was prejudicial and affected the outcome of the case, the third prong of this test is met. *Id.* at 741. Plain error will be considered prejudicial if "there is a reasonable likelihood" that the error "had a significant effect" on the jury's verdict. *Id.* If all three prongs of the plain error test are met, we then determine whether we "should address the error to ensure fairness and the integrity of the judicial proceedings." *Id.* at 740.

■■■■■■ "We analyze jury instructions 'with the understanding that trial courts possess significant discretion in the selection of instruction language and that instructions must be read as a whole to determine whether they accurately describe the law.'" *Earl*, 702 N.W.2d at 720 (quoting *State v. Smith*, 674 N.W.2d 398, 402 (Minn.2004)). If the instructions, when read as a whole, "correctly state[ ] the law in language that can be understood

by the jury, there is no reversible error." *State v. Peou*, 579 N.W.2d 471, 475 (Minn. 1998). In final instructions, the jury was given the following instruction on the state's burden of proof on the "past pattern of domestic abuse" element of first-degree domestic abuse murder:

> A "pattern of domestic abuse" is the existence of a domestic relationship and the distinguishing characteristics are the involvement of the same type of participants—victim and perpetrator—and the same types of assaultive conduct. It is not required that the State prove each past incident beyond a reasonable doubt. The State must prove a pattern of domestic abuse beyond a reasonable doubt.

This instruction is a correct statement of the law. *See State v. Manley*, 664 N.W.2d 275, 281–83 (Minn.2003) (holding that district court did not err in its instructions on the state's burden of proof—while state was required to prove past pattern of domestic abuse beyond a reasonable doubt it was not required to prove each act making up the past pattern beyond a reasonable doubt); *State v. Cross*, 577 N.W.2d 721, 726–27 (Minn.1998) (same).

Laine admits that he can cite no new authority to call into question the validity of *Cross* and *Manley*. The state correctly notes this court has required a "compelling reason" to justify overturning precedent. *See State v. Lee*, 706 N.W.2d 491, 494 (Minn.2005). Because the jury instruction was a correct statement of the law, it was not erroneous.

### III.

■■■ Before trial, Laine moved the district court to grant him a bifurcated trial in which the jury would not hear evidence regarding his past pattern of domestic abuse until the jury found that the state had met its burden of proof on the other elements of first-degree domestic abuse

murder. Noting Laine's failure to cite authority supporting his request, the district court denied the motion for bifurcation. On appeal, Laine argues that "it was prejudicial error to deny the defense motion to bifurcate." The parties agree that, assuming a district court does have this authority, the district court's decision not to bifurcate a first-degree domestic abuse murder trial would be reviewed for abuse of discretion. There is nothing in the record to suggest that the district court abused its discretion in denying Laine's motion to bifurcate his trial.

## IV.

▇▇▇ Laine also argues that the district court's cautionary instruction concerning the use of evidence of past domestic abuse was erroneous. At trial, the district court gave the jury the following instruction concerning the use of evidence of a past pattern of domestic abuse:

> The evidence received concerning statements that Nancy Christina Jagunich is alleged to have made sometime prior to October 1, 2001, were admitted for the limited purpose of assisting you in determining whether a pattern of domestic abuse exists in this case. The testimony of the Defendant's two ex-wives was also admitted for the limited purpose of assisting you in determining whether a pattern of domestic abuse exists in this case. You are not to use this evidence for any other purpose.

> The Defendant is not being tried for, and may not be convicted of, any offense other than the charged offenses. To do so might result in unjust double punishment.

As the state notes, the wording of this instruction appears to be the result of a collective drafting effort of the district court, Laine's trial counsel, and the state. Laine acknowledges that he did not object to this instruction before the district court. Therefore, while Laine can be deemed to have waived review of this error on appeal, we still have the discretion to review this issue if the disputed instruction contained plain error affecting substantial rights or an error of fundamental law. *See Crowsbreast*, 629 N.W.2d at 437.

Laine argues that the last sentence of the challenged instruction was erroneous because "[i]mplying that the defendant might have already been convicted for the alleged conduct allows a juror to assume that the defendant is *guilty* of the conduct." Laine argues that this implication "eviscerate[s] the presumption of innocence [and] allows the jurors to avoid serious deliberation on the instances of conduct alleged to form a pattern." The state argues that the instruction was neither erroneous nor prejudicial.

The challenged jury instructions, when read as a whole, correctly stated the law in language that could be understood by the jury. Laine's second wife (as well as Laine himself) testified that Laine had previously pled guilty to assaulting her during their marriage. The challenged jury instruction correctly described the purpose for which the jury could use this evidence, as well as the other evidence of a past pattern of domestic abuse. While Laine argues the instruction can be read to weaken the presumption of innocence and the state's burden of proof, the jury was instructed on the presumption of innocence as well as the state's burden of proof beyond a reasonable doubt. Moreover, Laine has not cited any authority to support his argument that this instruction is erroneous. Because, when read as a whole, the jury instructions correctly stated the law in a manner the jury could understand, the challenged instruction was not erroneous. *See Peou*, 579 N.W.2d at 475.

## V.

In final instructions, the jury was instructed on the following charges: first-degree domestic abuse murder, Minn.Stat. § 609.185(a)(6); second-degree intentional murder, Minn.Stat. § 609.19, subd. 1(1) (2004); second-degree felony murder, Minn.Stat. § 609.19, subd. 2(1) (2004) (the underlying felony being assault); first-degree manslaughter, Minn.Stat. § 609.20(2) (2004); and second-degree manslaughter, Minn.Stat. § 609.205(1) (2004). Second-degree felony murder, first-degree manslaughter, and second-degree manslaughter were submitted to the jury as lesser-included offenses of first-degree domestic abuse murder. On the second day of deliberations, the jury submitted the following question to the judge: "Do we need to turn in five (5) seperate [sic] guilty/not guilty forms, if the defendant is found guilty of one of the primary charges (murder I or II) do we still determine the manslaughter charges?" After conferring with the attorneys for both parties, the district court gave the jury the following response:

If you find the Defendant guilty of the Murder in the First Degree charge, you do not have to consider the question of whether the Defendant is guilty or not guilty of Murder in the Second Degree (while committing a Felony Assault), Manslaughter in the First Degree or the Manslaughter in the Second Degree charge.

If you find the Defendant not guilty of the Murder in the First Degree charge, then you can consider the question of whether the Defendant is guilty or not guilty of Murder in the Second Degree (while committing a Felony Assault), Manslaughter in the First Degree, or Manslaughter in the Second Degree charges.

There are no lesser offenses to be considered by the jury for the Murder in the Second Degree (Intent to Cause Death) charge.

While he did not object at trial, Laine appears to argue on appeal that the district court's response to the jury's question constituted plain error.

"It is well established that the trial judge may, in his discretion, give additional instructions in response to a jury's question on any point of law. The court has the discretion to decide whether to amplify previous instructions, reread previous instructions, or give no response at all." *State v. Murphy*, 380 N.W.2d 766, 772 (Minn.1986) (internal citation omitted).

Laine's argument that the district court's response to the jury's question was erroneous appears to be premised on the fallacy that permitting the jury to decline to consider lesser offenses permits the jury to find the defendant guilty of the greater offense without finding each element of the greater offense beyond a reasonable doubt. This is not a reasonable inference from the district court's response. Moreover, the jury was instructed on the elements of first-degree domestic abuse murder and the state's burden of proof beyond a reasonable doubt. Laine has cited no authority demonstrating the district court's response to be erroneous; thus, the "error," if any, can hardly be said to be clear. Regardless of whether the district court's response was erroneous, Laine cannot meet the requirements to establish that any error was plain. *See State v. Burg*, 648 N.W.2d 673, 677 (Minn. 2002) ("An error is plain if the error is 'clear' or 'obvious.' ").

## VI.

Laine also argues that the verdicts in this case were legally inconsistent. Whether verdicts are legally inconsistent

is a question of law reviewed de novo. *Leake*, 699 N.W.2d at 325. Laine bases this argument on the fact that, while the jury *found him guilty* of first-degree domestic abuse murder, it *acquitted* him of second-degree felony murder (with an underlying felony of assault). But, as the state points out, even if this verdict is logically inconsistent, we recently held that this type of inconsistency does not entitle a defendant to relief. Generally, " 'a defendant who is found guilty of one count of a two count indictment or complaint is not entitled to [relief] simply because the jury found him not guilty of the other count, even if the guilty and not guilty verdicts may be said to be logically inconsistent.' " *Id.* at 325 (quoting *State v. Juelfs*, 270 N.W.2d 873, 873–74 (Minn.1978)). In *Leake*, a case in which the jury had found the defendant guilty of first—degree premeditated murder and acquitted him of second—degree intentional murder, we held the verdicts were not legally inconsistent "[b]ecause the * * * case involves only logical inconsistencies-between a verdict of acquittal on one count and a verdict of guilty on another count." *Id.* at 325–26. *Leake* controls this issue and the jury verdicts in this case were not legally inconsistent.

Affirmed.

HANSON, Justice, concurring.

I write separately because the majority's discussion of Laine's bifurcation requests is, perhaps, too abrupt to provide guidance when the issue of bifurcation arises in other contexts.

I conclude that Laine does raise a legitimate concern that the evidence of a past pattern of domestic abuse might unduly prejudice the jury's decision on the other elements of first-degree domestic abuse murder. Although evidence of other acts of domestic abuse is relevant to the statutory element of a past pattern of domestic abuse, it does present a significant risk that it will be misused as character evidence to support the inference that the defendant was more likely to have committed the present crime because he has committed similar acts in the past. But I agree that the district court did not abuse its discretion in denying the motion to bifurcate, for two reasons.

First, the district court gave a cautionary instruction to the jury concerning the limited use of the evidence of past domestic abuse, which mitigated the potential for prejudice. Second, because the past pattern of domestic abuse is an element of first-degree domestic abuse murder, it is not clear how bifurcation could be practically accomplished. Laine was not charged with any other crime that presented all of the elements of domestic abuse murder except the element of past pattern of domestic abuse. Thus, there was no practical way to obtain a verdict in a phase one trial that could serve as a predicate to a phase two trial on a past pattern.[4]

Although there might be some circumstances where the denial of a motion to

---

4. Although Laine was charged with second-degree intentional murder, a verdict on this charge would not serve as a predicate for a phase two trial on the past pattern element. A verdict of guilty of second-degree intentional murder would not cover one of the other elements of domestic abuse murder, that it occur "under circumstances manifesting an extreme indifference to human life." *See* Minn.Stat. §§ 609.185(a)(6), 609.19, subd.

1(1) (2004). And a verdict of not guilty of second-degree intentional murder would not preclude a finding of domestic abuse murder because the latter does not require the "intent to effect the death." *See* Minn.Stat. § 609.19, subd. 1(1). Similarly, the elements of second-degree felony murder do not precisely match all of the elements of domestic abuse murder except the past pattern element. *See,* Minn. Stat. § 609.19, subd. 2(1) (2004).

bifurcate the trial of a highly prejudicial issue might be considered to be an abuse of discretion, the absence of any practical way to bifurcate the issue of past pattern of domestic abuse from the other elements of domestic abuse murder confirms that the denial of Laine's motion was not an abuse of discretion.