*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1408**

State of Minnesota,
Respondent,

vs.

Alvin Lee Fitzgerald, Jr.,
Appellant.

**Filed July 21, 2014
Affirmed
Reilly, Judge**

Pennington County District Court
File No. 57-CR-12-504

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Alan G. Rogalla, Pennington County Attorney, Kristin J. Hanson, Assistant County Attorney, Thief River Falls, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Davi E. Axelson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reilly, Presiding Judge; Ross, Judge; and Bjorkman, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REILLY**, Judge

Appellant Alvin Fitzgerald appeals his conviction of third-degree burglary, arguing that the district court erred in its response to the jury's questions during

deliberation and that the prosecutor committed misconduct in her closing statement. Additionally, appellant raises several issues in his pro se supplemental brief. We affirm.

## FACTS

Respondent State of Minnesota charged appellant by complaint with third-degree burglary, in violation of Minn. Stat. § 609.582, subd. 3 (2010), on June 18, 2012. The complaint alleged that appellant entered Speeds Auto Service in Thief River Falls without consent and stole $30 in change from a vending machine on June 14, 2012. A jury trial, held in April 2013, provided the following evidence.

On the night of June 14, 2012, Officer Chris Hoglin, a police officer with the City of Thief River Falls, received a call from dispatch notifying him of a suspicious person shaking the doors of McMullen Auto Sales. Dispatch indicated that the person subsequently walked toward a Kmart. When Officer Hoglin and another officer went to the scene, they stopped and talked with appellant, who was the only man walking in the Kmart parking lot. Appellant told the officers he was "passing through the area on foot" from Grand Forks, North Dakota, on his way toward Badger, Minnesota, to see his daughter. After noticing a bulge larger than a baseball in appellant's front pocket, Officer Hoglin patted down appellant and determined that appellant's front pocket contained change that appellant claimed came from panhandling. Appellant's rear pocket held a tire gauge, which appellant said he planned to disassemble later and use to smoke marijuana. When Officer Hoglin asked appellant "why he was shaking the door [at McMullen Auto Sales]," appellant responded that "he planned on buying a soda from the business." Officer Hoglin replied that "there were no soda machines at that business."

2

After dispatch verified that appellant was who he said he was, Officer Hoglin released appellant and followed him as he walked through town. Appellant walked west, which is not the direction of Badger.

Around 7:45 the next morning, Julie Efteland arrived for work at Speed's Auto Service, a business adjacent to McMullen Auto Sales, in Thief River Falls, and saw that, although the building had been in "normal" condition when she left the previous afternoon around 5:00, it was now a mess. A vending machine in the reception area had been tampered with. The top part of the machine, which contained candy, was sitting in another room, and the door to the bottom part of the machine, which contained pop, had been pried open. Although the safe in the owner's office had been tampered with, it had not been opened. Ms. Efteland noticed that the change from the vending machine that was kept in a bank bag and change stored in a beef jerky container was missing from her desk drawer. She estimated about $30 was missing from these containers and also noted "a couple bucks" missing from a breast cancer donation box. Greg Ornquist, the owner of Speed's Auto Service and Ms. Efteland's brother, estimated that between $30 and $50 was missing.

When Mr. Ornquist arrived at Speed's Auto Service about ten minutes later, he instructed Ms. Efteland to call the police. After she did, the two walked through the back of the shop where the cars awaiting repair are kept. They noticed the back door had been opened, either through "pr[ying]" or being "busted in," and surmised that the burglar entered the business through the back door. Mr. Ornquist noted that a bottle of homemade wine sat on top of a laptop computer. None of the auto shop tools appeared to

3

be missing, but some of the tools were damaged, apparently because they had been used to open the vending machine. Speed's Auto Service usually has five to ten tire gauges, but Mr. Ornquist did not know whether one was missing.

Neither Ms. Efteland nor Mr. Ornquist remembered seeing appellant on June 14. Ms. Efteland testified that either she or Mr. Ornquist is present in the reception area when the business is open, and Mr. Ornquist testified that, if both of them are gone, the worker in the first auto stall can see into the reception area. Ms. Efteland and Mr. Ornquist both testified that they did not give appellant permission to enter Speed's Auto Service and steal from them or damage their equipment.

Deputy Chief Craig Mattson of the Thief River Falls Police Department responded to the burglary complaint at Speed's Auto Service and called a department investigator to process the scene. The investigator was able to obtain fingerprints from the back side of the vending machine and the bottle containing homemade wine, but she did not attempt to lift prints off of any of the tools that had been moved. A forensic scientist compared the fingerprints found at the scene with fingerprints taken from appellant. Of the eight prints the forensic scientist received, two were sufficiently detailed to compare with appellant's fingerprints. The result of the comparison of one of the prints was inconclusive, but the forensic scientist identified the other print as a match to appellant's right index finger. At trial, the forensic scientist testified that it is not uncommon for prints not to be present on a surface and that it is typically impossible to tell how old a latent print is.

Officer Hoglin arrested appellant without incident for the burglary at Speed's Auto Service. The jury found appellant guilty of third-degree burglary on April 11, 2013, and appellant was subsequently sentenced. He now appeals.

**D E C I S I O N**

**I.**

Appellant argues that the district court erred when it referred the jury back to the original jury instructions rather than give supplemental instructions to clarify the jury's questions. Appellant contends that the jury's questions demonstrate that it was confused, and the court's response did not correct that confusion.

In its original instructions, the district court read the following instruction for burglary in the third degree:

> Burglary in the Third Degree – Defined. The statutes of Minnesota provide that whoever enters a building without the consent of the person in lawful possession and steals while in the building is guilty of a crime.
> Burglary in the Third Degree – Elements. The elements of burglary in the third degree are: First, the defendant entered a building. A building is a structure suitable for affording shelter for human beings. Second, the defendant entered a building without the consent of the person in lawful possession. The entry does not have to have been made by force or by breaking in. Entry through an open or unlocked door or window is sufficient. Third, while in the building, the defendant stole. Fourth, the defendant's act took place on or about June 14, 2012, in Pennington County, Minnesota. If you find that each of these elements has been proven beyond a reasonable doubt, the defendant is guilty. If you find that any element has not been proven beyond a reasonable doubt, the defendant is not guilty.

5

After deliberations had begun, the jury submitted two questions to the district court: "Is it illegal to come into a business during business hours[?]" and "Is [sic] #2 mean during or after business hours[?]" Off the record, the district court discussed with the prosecutor and appellant's attorney what an appropriate response might be. The district court responded by writing that "[y]our question seems to go to a question of fact that the court cannot answer. Sorry, but you will have to rely on the instructions as given and your recollection of the evidence." Both attorneys agreed the district court's response was acceptable.

We review a district court's decision to give additional instructions to a jury for an abuse of discretion. *See State v. Laine*, 715 N.W.2d 425, 434 (Minn. 2006) ("It is well established that the trial judge may, in his discretion, give additional instructions in response to a jury's question on any point of law." (quotation omitted)). In response to a jury's question on a point of law, the district court may decide "to amplify previous instructions, reread previous instructions, or give no response at all." *State v. Murphy*, 380 N.W.2d 766, 772 (Minn. 1986); *see* Minn. R. Crim. P. 26.03, subd. 20(3)(a)-(f) (delineating the ways in which a district court may respond to a jury's request for additional instructions during deliberation). The only real limitation placed on the trial court is that the additional instruction may not be given in such a manner as to lead the jury to believe that it wholly supplants the corresponding portion of the original charge," and additional instructions clarifying the original instructions may be appropriate if a jury is confused. *Murphy*, 380 N.W.2d at 772.

Because appellant did not object to the district court's response, we review the district court's response for plain error. *See State v. Moore*, 846 N.W.2d 83, 90 (Minn. 2014) (noting an appellate court has discretion to review an unobjected-to instruction if it constitutes plain error affecting substantial rights). "Under the plain-error test, an appellant must show that there was (1) an error; (2) that is plain; and (3) the error must affect substantial rights." *State v. Vang*, ___ N.W.2d ___, 2014 WL 1805320, at *7 (Minn. 2014). If all three prongs of the plain-error test are met, "we then assess whether the error should be addressed to ensure the fairness and the integrity of the judicial proceedings." *Gulbertson v. State*, 843 N.W.2d 240, 247 (Minn. 2014).

After consultation with both parties' counsel, the district court here told the jury that the question related to a factual matter upon which it could not comment. This is a permitted response under the Minnesota Rules of Criminal Procedure. *See* Minn. R. Crim. P. 26.03, subd. 20(3)(d) ("The court may tell the jury that the request is a factual matter that the jury, not the judge, must determine."). Appellant argues this response was erroneous because the jury was clearly confused, and the district court's response did not correct the confusion.

Minnesota law provides that "[w]hoever enters a building while open to the general public does so with consent except when consent was expressly withdrawn before entry." Minn. Stat. § 609.581, subd. 4 (2010). Appellant contends that the district court erred by failing to correct the jury's misunderstanding that entering a business during business hours cannot constitute burglary. We disagree.

7

Appellant has not shown that the district court's instruction was error because the evidence presented at trial provides no factual basis from which a jury could find that a crime was committed during business hours. The testimony presented at trial shows that the vending machine had not been tampered with before Ms. Efteland left work on June 14 around 5:00 p.m., and that, when she returned to work the following morning, the vending machine had been broken into and change had been stolen from it. Both Ms. Efteland and Mr. Ornquist testified that they did not see appellant on June 14, 2012. Although the record does not contain evidence indicating Speed's Auto Service's normal operating hours, the record shows that the burglary occurred sometime after Ms. Efteland left Speed's Auto Service around 5:00 and before she returned the next morning. And although appellant's counsel argued in closing that appellant's fingerprints on the candy machine were the result of appellant visiting Speed's Auto Service during business hours in an attempt to purchase some soda, this visit would have occurred during business hours and at a time when the money from the vending machine had not yet been stolen. Whoever stole the money from the vending machine did so when Speed's Auto Service was closed to the public. Therefore, the jury's question of whether a person may legally enter a business during business hours is not related to whether the state had proven the second element of burglary, that appellant entered Speed's Auto Service without consent.

Appellant cites *State v. Shannon*, 514 N.W.2d 790, 793 (Minn. 1994), for the proposition that "it is prejudicial error for a district court to respond to a jury request for clarification by refusing to correct the confusion" when "the jury is 'obviously confused.'" While this may be true, the facts of *Shannon* differ in an important respect

8

from those in appellant's case. In *Shannon*, the prosecutor misstated the law during closing argument by improperly calling heat-of-passion manslaughter "heat of passion murder" and told the jury that, in evaluating whether the elements of heat-of-passion manslaughter had been met, it must use the "reasonable person . . . who wasn't on drugs or wasn't taking alcohol" standard. *Id.* at 791-92. When the jury asked questions during deliberation that went to whether being under the influence of chemicals was a factor in determining what a reasonable person would have done in the situation, the district court responded by referring the jury back to the original instructions. *Id.* at 792. On appeal, the Minnesota Supreme Court reasoned that the jury's questions were "presumably . . . a result of the prosecutor's misleading statement in closing argument" and concluded the district court's failure to correct the confusion about the proper standard was prejudicial error. *Id.* at 792-93. *Shannon* therefore is distinguishable because the jury's confusion there arose from misstatements made by the prosecutor during closing statement. Such is not the case here.

Because the evidence admitted at trial does not lend any support for a factual finding that the theft from the vending machine occurred during business hours and the prosecutor did not misstate the law, the district court's response, which referred the jury back to its original instructions, is not erroneous.

## II.

Appellant contends that certain statements in the prosecutor's closing argument constitute prosecutorial misconduct. Before voir dire began, appellant's counsel requested that law enforcement testimony about its interaction with Jennifer McMullen,

9

the woman who initially called law enforcement on June 14, be limited to describing "receiving a call about suspicious activity and [law enforcement's] response to that call" because Ms. McMullen would not be testifying at trial. The prosecutor stated that law enforcement's testimony regarding Ms. McMullen "would be just based on what the dispatch reports . . . and not anything she says directly to them," unless the defense "open[ed] the door" by asking why law enforcement stopped appellant.

Officer Hoglin testified that "[d]ispatch received a call from McMullen Auto Sales that said they had somebody who appeared to be getting into their building shaking doors." He also testified later that, in response to his question of why appellant was shaking the door, appellant stated that he planned to buy a soda. In her closing argument, the prosecutor told the jury, "We didn't see Mr. Fitzgerald in Speed's Auto. He's found adjacent from Speed's Auto pulling on the door of another business. That's circumstantial evidence." A short time later, she stated,

> The [finger]print is in the exact place you would want to find a print to be when this [vending] machine has been moved. That's the night before and with all the circumstantial evidence this is not a coincidence. It's not a coincidence that Mr. Fitzgerald was in the same place a burglary took place, pulling on a door.

Appellant did not object to these statements at trial.

When a defendant fails to object, we review alleged prosecutorial misconduct for plain error. *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). Once an appellant shows an error that is plain, however, the burden shifts to the state to prove that no

10

reasonable likelihood exists that the absence of the misconduct would have a significant effect on the jury's verdict. *Id.*

"[A] police officer testifying in a criminal case may not, under the guise of explaining how the investigation focused on defendant, relate hearsay statements of others." *State v. Litzau*, 650 N.W.2d 177, 182 (Minn. 2002) (quotations omitted). It is plain error for a prosecutor, in closing statement, to "invite[] the jury" to use a defendant's suppressed statement, admitted only for impeachment purposes, as substantive evidence. *State v. Radke*, 821 N.W.2d 316, 329 (Minn. 2012). Although Officer Hoglin testified only that dispatch received a call about "somebody" shaking the doors at McMullen Auto Sales, the prosecutor, in her closing statement, added that the person shaking the doors was appellant. Were the prosecutor's statements in closing argument the only statements linking appellant to the person shaking the doors of McMullen Auto Sales, appellant would have a strong argument that the prosecutor committed misconduct. But Officer Hoglin also testified that appellant told him he shook the doors in an attempt to purchase a soda, and that statement is not hearsay. *See* Minn. R. Evid. 801(d)(2)(A) (defining a statement made by a party and offered against that party as nonhearsay). The prosecutor did not violate the agreement made with defense counsel not to admit the hearsay testimony of Ms. McMullen through the testimony of Officer Hoglin but instead referenced appellant's own statements to Officer Hoglin. The statements the prosecutor made in her closing argument were not erroneous and do not constitute prosecutorial misconduct. There is no need to address the other prongs of *Ramey* because appellant has shown no error.

11

Appellant alleges several reversible errors in his pro se supplemental brief. None are meritorious.

*Confrontation Clause*

Appellant contends that he was denied a fair trial when the prosecutor failed to call Ms. McMullen to testify as to what she told the dispatch officer and thereby violated the Confrontation Clause. Because appellant did not raise this issue below, we review for plain error. *See* Minn. R. Crim. P. 31.02; *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998) (stating test for plain error).

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const., amend. VI. The Confrontation Clause "prohibits 'admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination.'" *State v. Warsame*, 735 N.W.2d 684, 689 (Minn. 2007) (quoting *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S. Ct. 1354, 1365 (2004)). A statement is nontestimonial "when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Davis v. Washington*, 547 U.S. 813, 822, 126 S. Ct. 2266, 2273 (2006). Moreover, "the Confrontation Clause does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *State v. Hull*, 788 N.W.2d 91, 100 (Minn. 2010) (quotation omitted). Whether

the admission of evidence violates a defendant's confrontation rights is a question of law reviewed de novo. *Warsame*, 735 N.W.2d at 689.

Here, the facts indicate that Ms. McMullen called the police as she was observing a person shaking the doors of McMullen Auto Sales. The purpose of her call was to enable police to respond to a possible criminal event—a person attempting to break into McMullen Auto Sales. Ms. McMullen's call is analogous to the 911 call in *State v. Wright*, 726 N.W.2d 464, 473-74 (Minn. 2007), where the Minnesota Supreme Court concluded that the portions of a 911 call made while a domestic abuser had yet to be apprehended were nontestimonial because the caller was not acting as witness by calling police to obtain assistance during an ongoing emergency. Because Ms. McMullen's call was nontestimonial in nature, it does not implicate appellant's Confrontation Clause rights. Even if the statement were testimonial, however, Officer Hoglin's testimony regarding the call was not offered to prove the truth of the matter asserted and therefore did not violate appellant's confrontation rights. *See Hull*, 788 N.W.2d at 100. The district court did not err in admitting the testimony.

### Hearsay

Appellant argues that the district court erred in admitting statements regarding the contents of the dispatch call. We review a district court's evidentiary rulings for abuse of discretion. *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003). When a defendant fails to object to the admission of evidence, our review is under the plain-error standard. *See Griller*, 583 N.W.2d at 740.

13

As noted above, hearsay is an out-of-court statement offered to prove the truth of the matter asserted, Minn. R. Evid. 801(c). A statement made by a party and offered against that party at trial is not hearsay, Minn. R. Evid. 801(d)(2)(A). Although appellant is correct that testimony about what Ms. McMullen said to the dispatch operator, if not made in court and by Ms. McMullen herself, would constitute hearsay if offered to prove the truth of what Ms. McMullen told the dispatch officer, such testimony is not on the record. Ms. McMullen did not testify, and Officer Hoglin mentioned the dispatch call to show why police were called to the scene, not to prove the truth of the dispatch caller's statements. Moreover, the statements appellant made to Officer Hoglin in response to his question of why appellant was shaking the doors are not hearsay because the Minnesota Rules of Evidence expressly define statements of a party-opponent as nonhearsay. Minn. R. Evid. 801(d)(2)(A). The district court did not abuse its discretion by admitting these statements because they do not constitute hearsay.

### Ineffective Assistance of Counsel

Finally, appellant contends he received ineffective assistance of counsel because his attorney did not subpoena Ms. McMullen to testify and did not object to allegedly inadmissible hearsay evidence or the prosecutor's alleged violation of his rights under the Confrontation Clause. As appellant has not made any postconviction motions, he raises this argument for the first time on appeal.

We generally analyze ineffective-assistance-of-counsel claims as trial errors under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). *Dereje v. State*, 837 N.W.2d 714, 721 (Minn. 2013). Under that analysis, "an appellant must demonstrate that

14

counsel's performance fell below an objective standard of reasonableness, and that a reasonable probability exists that the outcome would have been different but for counsel's errors." *State v. Rhodes*, 657 N.W.2d 823, 842 (Minn. 2003) (quotation omitted). Trial counsel's performance is presumed reasonable. *Schneider v. State*, 725 N.W.2d 516, 521 (Minn. 2007).

Appellant's pro se supplemental brief shows a general dissatisfaction with the fact he was convicted. He appears to believe that, but for his attorney's failure to call Ms. McMullen to testify, he would not have been convicted. "Decisions about which witnesses to call at trial and what information to present to the jury are questions of trial strategy that lie within the discretion of trial counsel." *Leake v. State*, 737 N.W.2d 531, 539 (Minn. 2007). We generally will not review an ineffective-assistance-of-counsel claim based on trial strategy. *Vang*, ___ N.W.2d ___, 2014 WL 1805320, at *12. Appellant has not shown that counsel's decision not to subpoena Ms. McMullen was not a strategic decision, and we conclude counsel's performance was objectively reasonable.

Appellant also asserts that he received ineffective assistance of counsel because his trial attorney did not object to alleged inadmissible hearsay statements and violations of the confrontation clause. "Decisions about objections at trial are matters of trial strategy." *Leake*, 737 N.W.2d at 542 (citing *White v. State*, 711 N.W.2d 106, 110 (Minn. 2006)). The discussion above shows that appellant is incorrect on the law regarding hearsay. Appellant has failed to show that counsel's performance with respect to evidentiary objections fell below an objective standard of reasonableness, and we conclude counsel's actions were objectively reasonable.

15

Additionally, the trial transcript contradicts appellant's assertions that his attorney was not representing his interests. Appellant's counsel thoroughly cross-examined all the state's witnesses and offered reasonable arguments for appellant's innocence in his opening and closing statements. Appellant's contention that his counsel was ineffective is based on appellant's own misunderstanding of the law. After a thorough review of the record in this case, we conclude that appellant did not receive ineffective assistance of counsel.

**Affirmed.**