STATE of Minnesota, Respondent,

v.

Burr CROWSBREAST, III, Appellant.

No. C8–99–1913.

Supreme Court of Minnesota.

July 12, 2001.

John M. Stuart, State Public Defender, Theodora Gaitas, Asst. State Public Defender, Minneapolis, attorney for appellant.

Mike Hatch, Attorney General, James B. Early, Asst. Attorney General, St. Paul, and Thomas G. Kramer, Yellow Medicine County Attorney, Granite Falls, attorney for respondent.

## OPINION

LANCASTER, Justice.

A Yellow Medicine County jury found Burr Crowsbreast, III guilty of first-degree domestic abuse homicide, first-degree premeditated murder, second-degree intentional murder, second-degree felony murder, first-degree assault and second-degree assault for beating his girlfriend Latisha Brien to death with a baseball bat. While he was incarcerated and awaiting trial, Crowsbreast voluntarily confessed to killing Brien. At trial, counsel for Crowsbreast did not deny that Crowsbreast killed Brien; the only issue argued was the degree to which he was culpable for the murder. The trial court entered judgment of conviction on the charge of domestic abuse homicide, Minn.Stat. § 609.185(6) (2000), and sentenced Crowsbreast to life in prison.

On appeal from his judgment of conviction, Crowsbreast argues that the jury instructions given at trial violated his federal due process rights and state law because: (1) the trial court failed to instruct the jury that the predicate acts forming the "past pattern" of domestic abuse must be proved beyond a reasonable doubt; and (2) the court failed to instruct the jury that it must unanimously agree on which predicate acts formed the past pattern of domestic abuse. Lastly, Crowsbreast argues that the jury verdicts of guilty of domestic abuse homicide and premeditated murder

are legally inconsistent, and he requests a new trial. We affirm.

Appellant Burr Crowsbreast dated the victim, Latisha Brien, on and off for approximately one and a half years before she was killed. Brien resided with Crowsbreast in Granite Falls periodically, most recently from November 4, 1998, until her death on January 15, 1999. The couple also had a son.

On January 14, 1999, Crowsbreast had been drinking with friends. He joined Brien, her uncle Larry Brien and Larry's wife, Phylliss Little Creek (Crowsbreast's half-sister), at a bar in Maynard at about 8:00 p.m. Crowsbreast and Brien continued drinking until about 11:00 p.m. at which point Larry Brien and Phylliss drove them home. About 15 minutes after being dropped off, Brien knocked on the door of Larry's and Phylliss's nearby trailer and said that she had been fighting with Crowsbreast. Brien stayed for a while and then returned to Crowsbreast's trailer. She asked Larry to call her in the morning.

When Larry called Brien in the morning, she did not answer her cellular phone. Larry then called Crowsbreast. Crowsbreast said that Brien left in the middle of the night after an argument and that he had not seen her since. He also said that Brien was not scheduled to work that weekend, which Larry soon found out was false. Larry became concerned that Brien was missing because she did not have a car or money and she missed work. He called the police and reported Brien missing on January 18, 1999.

The police searched Crowsbreast's trailer. They found a large bloodstain on the mattress in Crowsbreast's bedroom. There was also blood on the floor, walls, and ceiling. The police eventually found Brien's body buried in a garbage pile outside a nearby trailer. The cause of death was multiple traumatic injuries, including severe skull fractures. The medical examiner determined that Brien had been struck at least 37 times with a blunt instrument consistent with a baseball bat. The police later recovered a baseball bat that had traces of the victim's blood on it from a crawl space in Crowsbreast's trailer.

Crowsbreast was indicted for Latisha Brien's murder on February 19, 1999. On April 7, 1999, while he was in custody, Crowsbreast was viewing the state's photographs of the murder scene under the supervision of a sheriff's deputy. While viewing the photographs, he gave an account of what happened on the night of January 14. Crowsbreast stated that he and Brien were arguing and that she threw a shoe at him. He became enraged, got a baseball bat, and beat Brien to death with the bat. This statement contrasts with an earlier statement that Crowsbreast made on January 20, 1999, where he admitted involvement in the murder but implicated Larry Brien.

At trial, in connection with the first-degree domestic abuse homicide charge, the state presented four incidents of abuse as evidence of the past pattern of domestic abuse required under Minn.Stat. § 609.185(6). Three of the incidents were supported by Brien's statements about the incidents. The trial court admitted most of the testimony regarding what Brien said as an exception to the hearsay rule under *State v. Grube*, 531 N.W.2d 484, 489 (Minn. 1995), because the declarant was unavailable and the statements were supported by "particularized guarantees of trustworthiness."

Police officers testified as to the first incident, which occurred on February 15, 1998. At about 1:15 a.m., police officers saw a truck stopped in the middle of the

road and Brien getting out of it and running down the road away from the truck. Distressed and crying, Brien reported to the officers that she and Crowsbreast had been arguing, he assaulted her, hurt her arm, and dumped her out of the truck. After making sure that Brien was okay, the officers drove her to the residence where her children were.

The officers testified that about a half hour later they were called to the address where they had dropped Brien off earlier. The officers found Brien lying on the driveway, and she appeared to be in pain. Brien and a witness, who also testified at the trial, told the officers that Crowsbreast had kicked Brien in the head and chest, and the officer testified that he saw footprints on Brien's chest and abdomen. Crowsbreast pleaded guilty to assault and admitted during the sentencing that he had kicked Brien in the head and face and had assaulted her in the truck.

Brien's mother testified as to the second incident. In March 1998, Brien was visiting her mother in Montana. Brien's mother testified that Brien had a wound on her hand that had become infected and was quite painful. Brien was then hospitalized for four days because of the wound. She told her mother and the treating physician that Crowsbreast had stabbed her.

Another witness testified as to the third incident, which occurred on November 18, 1998, when the witness was in a hotel room drinking with Crowsbreast and Brien. The witness testified that Crowsbreast and Brien began arguing and when Brien got up to leave, Crowsbreast grabbed her and Brien stumbled backward and fell, breaking the back off a chair. The police were called, but Brien did not want to file a complaint.

A battered women's advocate testified as to the fourth incident of abuse, which occurred on December 31, 1998. Brien re-counted the incident to the advocate at a clinic where Brien received treatment for her injuries. Brien said she had been drinking at a friend's house and passed out on the couch. She woke up in Crowsbreast's trailer with no clothes on, and she was in a lot of pain. She then went outside and found Crowsbreast trying to hang himself from a tree. She cut him down and took him inside. He began cutting his wrists saying over and over, "I'm so sorry for what I did to you." Then Crowsbreast started to verbally abuse and physically assault Brien who then left and went to Larry Brien's and Phylliss Little Creek's trailer. When she arrived, Brien had a mouth full of blood, blood on her shirt, and a black eye. She was taken to the clinic a few hours later where she received 15 stitches in her mouth.

The jury found Crowsbreast guilty of first-degree domestic abuse homicide, first-degree premeditated murder, second-degree intentional murder, second-degree felony murder, and first- and second-degree assault. A judgment of conviction was entered on the first-degree domestic abuse homicide charge. In order to convict someone of first-degree domestic abuse homicide under Minn.Stat. § 609.185(6), the state must prove that the defendant: (1) caused the death of another; (2) while committing domestic abuse; (3) under circumstances manifesting an extreme indifference to human life; and (4) engaged in a past pattern of domestic abuse upon the victim. Domestic abuse is defined as an act that constitutes one of several forms of assault, criminal sexual conduct, terroristic threats, or similar acts, and is committed against a household or family member. Minn.Stat. § 609.185 (2000).

I.

■ Crowsbreast first argues that the trial court erred by not instructing the

jury that each incident of abuse alleged to comprise the past pattern of domestic abuse must be proved beyond a reasonable doubt. Although he did not request that instruction, Crowsbreast argues on appeal that a recent United States Supreme Court decision, *Richardson v. United States*, 526 U.S. 813, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999), supports his position. Thus, a threshold issue is whether Crowsbreast, by failing to request the instruction, waived his right to raise this issue on appeal.

■■■ Rule 26.03, subd. 18(3) of the rules of criminal procedure prohibits a party from "assign[ing] as error any portion of the charge or omission" unless the party objects to the instructions before they are given to the jury. *State v. Cross*, 577 N.W.2d 721, 726 (Minn.1998). However, even when there was no objection to the jury instructions at trial, we have discretion to consider a claim of error on appeal if there was "plain error affecting substantial rights" or an error of fundamental law in the jury instructions. *State v. Malaski*, 330 N.W.2d 447, 451 (Minn.1983); *see also State v. Gustafson*, 610 N.W.2d 314, 318 (Minn.2000). In deciding whether to correct an unobjected-to error, we follow the test the United States Supreme Court articulated in *Johnson v. United States*, 520 U.S. 461, 466–67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). Specifically, we may review and correct an unobjected-to, alleged error only if: (1) there is error; (2) the error is plain; and (3) the error affects the defendant's substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn.1998) (citing *Johnson*, 520 U.S. at 466–67, 117 S.Ct. 1544). If those three prongs are met, we may correct the error only if it "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Johnson*, 520 U.S. at 467, 117 S.Ct. 1544 (internal quotation marks and cita-

tions omitted); *see Griller*, 583 N.W.2d at 740.

In *State v. Cross*, 577 N.W.2d at 726–27, we addressed the precise question that Crowsbreast raises today. In *Cross*, the defendant appealed from his conviction of first-degree domestic abuse homicide. 577 N.W.2d at 723. He challenged the trial court's jury instructions in that they did not instruct the jury that the state must prove each individual incident of prior domestic abuse offered as evidence of a "past pattern of domestic abuse" beyond a reasonable doubt. *Id.* at 723, 726. Like Crowsbreast, the defendant in *Cross* failed to challenge the instructions at trial and thus we reviewed for plain error. *Id.* at 726. We held that the plain language of the first-degree domestic abuse homicide statute does not require proof beyond a reasonable doubt as to the underlying acts making up the past pattern. *Id.* at 726–27. Crowsbreast recognizes the holding in *Cross*, but asks us to revisit that holding in light of *Richardson v. United States*, 526 U.S. 813, 119 S.Ct. 1707, 143 L.Ed.2d 985.

Crowsbreast claims that the Court's decision in *Richardson*, which was issued six weeks before his trial began, mandates a new trial based on erroneous jury instructions. In *Richardson*, the Court reviewed jury instructions concerning a charge under 21 U.S.C. § 848(a) (1994), the federal Continuing Criminal Enterprise (CCE) Statute. 526 U.S. at 816, 119 S.Ct. 1707. The CCE statute requires a federal district court to impose a mandatory minimum prison term of 20 years where it finds that the defendant violated any provision of the federal drug laws and "such violation is a part of a continuing series of violations" of the federal drug laws. 21 U.S.C. § 848(a), (c). Crowsbreast analogizes the "continuing series of violations" language in the CCE statute to the requirement in the domestic abuse homicide

statute that the state prove "a past pattern of domestic abuse." The Court in *Richardson* held that the CCE statute required jury unanimity with respect to each individual violation alleged to make up the series of violations. 526 U.S. at 824, 119 S.Ct. 1707. Crowsbreast argues that in his case the jury should have been instructed both that the state was required to prove each act in the past pattern of domestic abuse beyond a reasonable doubt and that the jury had to unanimously agree on which acts make up the pattern.

We need not determine the effect, if any, that the *Richardson* decision has on our holding in *State v. Cross* because even if there was error in this case, we conclude that it was not plain. In *Cross*, we clearly held that Minn.Stat. § 609.185(6) does not require proof beyond a reasonable doubt of the acts that make up the past pattern of domestic abuse. *Cross*, 577 N.W.2d at 727. Even if we assume that *Richardson's* analysis of the federal CCE statute casts doubt on the legal underpinnings of *Cross*, such doubt does not elevate the alleged error in this case to one that is plain. To the contrary, any doubt about whether *Cross* remained good law at the time the trial court instructed the jury cuts against Crowsbreast's argument; such doubt confirms that if there was error, it was not plain. *E.g., Davoll v. Webb*, 194 F.3d 1116, 1141–42 (10th Cir.1999) ("When the law is unsettled, the decision to instruct one way or the other does not constitute plain error."); *Heath v. Suzuki Motor Corp.*, 126 F.3d 1391, 1394 (11th Cir.1997) ("Heath's briefs to this court plainly indicate that the law in Georgia is not clear with regard to the [alleged error involved in this case.] It is for this reason that we decline to find the jury instructions drafted by the trial court constituted plain error."); *Holmes v. City of Massillon*, 78 F.3d 1041, 1049 n. 6 (6th Cir.1996) (noting that, because the law of the circuit was unclear as to the alleged error in question, any error committed by the trial court was not plain). Accordingly, we hold that the trial court did not commit plain error by failing to instruct the jury that each past incident of abuse alleged to comprise the "past pattern of domestic abuse" must be proved beyond a reasonable doubt and therefore Crowsbreast is not entitled to a new trial on that basis.

## II.

Crowsbreast's second argument is that the trial court erred because it did not instruct the jurors that they must unanimously agree on which specific predicate acts comprised the past pattern of domestic abuse. *See* Minn. R.Crim. P. 26.01, subd. 1(5) (requiring that a jury verdict be unanimous in all cases); *Richardson*, 526 U.S. at 818–19, 119 S.Ct. 1707 ("To hold that each 'violation' here amounts to a separate element is consistent with a tradition of requiring juror unanimity where the issue is whether a defendant has engaged in conduct that violates the law."). Because Crowsbreast did not request such an instruction at trial, we review this second issue for plain error and the decision to correct the unobjected-to instruction is within our discretion. *Griller*, 583 N.W.2d at 740.

The United States Supreme Court addressed the requirement of jury unanimity in *Schad v. Arizona*, where the jury was instructed that it could find the defendant guilty of first-degree murder either by finding premeditation or the components of felony murder. 501 U.S. 624, 629, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991). In *Schad*, a felony murder theory was advanced in addition to a premeditation theory because the murder might have occurred in the course of a robbery. *Id.* at 628–29, 111 S.Ct. 2491. The defendant argued that the jury should be required to

agree on the mental state necessary for the crime. *Id.* at 627, 111 S.Ct. 2491. The Court stated:

> We have never suggested that in returning general verdicts in such cases the jurors should be required to agree upon a single means of commission, any more than the indictments were required to specify one alone. In these cases, as in litigation generally, "different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict."

*Id.* at 631–32, 111 S.Ct. 2491 (quoting *McKoy v. North Carolina*, 494 U.S. 433, 449, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990) (Blackmun, J., concurring)).[1] The Court noted that the Due Process Clause limited the state's ability to define different courses of conduct as making up a single crime, preventing a state from defining as a single crime multiple offenses that are inherently separate. *Schad*, 501 U.S. at 640, 111 S.Ct. 2491; *see id.* at 650, 111 S.Ct. 2491 (Scalia, J., concurring in part and concurring in judgment). Justice Scalia gave an example of a felony consisting of either robbery or failure to file a tax return where six jurors believe the defendant committed only one of those crimes, and the other six believe the defendant committed the other. *Id.* at 650, 111 S.Ct. 2491. A plurality of the court found it impractical to attempt to derive a single test for verdict specificity permitted by the Constitution, and instead referred to concepts of fundamental fairness and rationality. *Id.* at 637, 111 S.Ct. 2491.

■ The grouping of past acts of domestic abuse as a preliminary factual element of domestic abuse homicide, which underlies the verdict, is in no way an irrational or unfair definition of domestic abuse homicide, nor are those acts so inherently separate as to present a due process issue as to jury unanimity. Minnesota Statutes § 609.185(6) requires proof of not only the past acts of domestic abuse upon the victim that constitute the common means establishing a pattern, but also requires verdict specificity that the death of the victim was caused while the accused was committing domestic abuse. There is therefore a logical connection between the preliminary factual elements and the homicide. We conclude that jurors are not required to unanimously agree on which acts comprised the past pattern of domestic abuse. "[D]ifferent jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line * * *." *Schad*, 501 U.S. at 631–32, 111 S.Ct. 2491 (citation and internal quotation marks omitted). In this case, the jury found that Crowsbreast engaged in a past pattern of domestic abuse involving a course of conduct that in the last instance resulted in a charge of domestic abuse homicide. Therefore, we hold that there was no error in the jury instructions. As such, we need not proceed to determine whether the error was plain or whether it affected substantial rights.

### III.

■ In his third and final argument, Crowsbreast requests a new trial on the ground that the jury's guilty verdicts for both first-degree domestic abuse homicide and first-degree premeditated murder are

---

**1.** *Schad* was decided by a four-member plurality with Justice Scalia concurring in the judgment. Justice Scalia agreed that when a single crime can be committed in various ways, jurors need not agree on a single mode of commission. 501 U.S. at 649, 111 S.Ct. 2491.

legally inconsistent. He argues that the mental states required for each crime, premeditation and manifest indifference, are legally inconsistent, and therefore a jury cannot find him guilty of both crimes.

 Verdicts are legally inconsistent if proof of the elements of one offense negates a necessary element of another offense. *State v. Cole*, 542 N.W.2d 43, 50 (Minn.1996). If a jury renders legally inconsistent verdicts, reversal is warranted. *State v. Moore*, 481 N.W.2d 355, 360 (Minn.1992).

It is possible for premeditation and extreme indifference to coexist. As we recently held in *State v. Bradford*, "[w]hile domestic abuse murder only requires extreme indifference, it does not preclude the possibility that a higher level of intent may be present." 618 N.W.2d 782, 800 (Minn. 2000). In *Bradford*, we held that lack of intent is not an element of first-degree domestic abuse homicide. *Id.* Likewise, lack of premeditation is not an element of first-degree domestic abuse homicide. Therefore, first-degree premeditated murder does not require proof of an element that negates a necessary element of first-degree domestic abuse homicide. We hold that the verdicts of guilty of first-degree domestic abuse homicide and first-degree premeditated murder are not legally inconsistent.

Affirmed.