*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2380**

State of Minnesota,
Respondent,

vs.

Karen Marie O'Farrell,
Appellant.

**Filed November 24, 2014
Affirmed
Bjorkman, Judge**

Blue Earth County District Court
File No. 07-CR-13-920

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Eileen Wells, Mankato City Attorney, Linda Boucher Hilligoss, Assistant City Attorney, Mankato, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Chang Y. Lau, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Halbrooks, Presiding Judge; Connolly, Judge; and Bjorkman, Judge.

**U N P U B L I S H E D   O P I N I O N**

**BJORKMAN**, Judge

Appellant challenges her conviction of fourth-degree driving while impaired (DWI), arguing (1) the state failed to prove beyond a reasonable doubt that she was in

physical control of a motor vehicle while under the influence of alcohol and (2) she was denied a fair trial by the state's use of inadmissible evidence and improper statements during closing arguments. We affirm.

**FACTS**

Early in the morning of March 9, 2014, appellant Karen O'Farrell left the Underground Bar in Mankato. A.D., a bar employee, had observed O'Farrell throughout the evening and saw her enter her car. A.D. called the police, concerned that O'Farrell was intoxicated and might drive away. Officer Steven Hoppe arrived at the scene first. He discovered O'Farrell sitting in the driver's seat with the engine running. Officer Hoppe noticed that she smelled of alcohol and had trouble speaking clearly. He asked O'Farrell to turn off the vehicle and give him the keys, which she did. Officer Jessica Ellis then arrived at the scene, where she spoke with O'Farrell and administered the horizontal gaze nystagmus (HGN) test before placing her under arrest for DWI. No other field sobriety tests were conducted because O'Farrell has a disability that impairs her ability to stand on one foot or walk in a straight line. While in custody, O'Farrell consented to a urine test to determine her alcohol concentration.

Respondent State of Minnesota charged O'Farrell with two counts of DWI. At trial, Officer Hoppe, Officer Ellis, and A.D. testified. The state was unable to present evidence of O'Farrell's alcohol concentration because the Minnesota Bureau of Criminal Apprehension witness failed to appear. Accordingly, the district court dismissed the second DWI count, Minn. Stat. § 169A.20, subd. 1(5) (2012), on the ground that the state

2

could not establish that O'Farrell's alcohol concentration exceeded .08 without the test results.

O'Farrell was convicted of being in physical control of a motor vehicle while under the influence of alcohol. O'Farrell appeals.

## D E C I S I O N

**I.     Sufficient evidence supports O'Farrell's conviction.**

When considering a sufficiency-of-the-evidence challenge, we view the evidence in the light most favorable to the conviction to determine whether it would permit a jury to reasonably conclude that the defendant was guilty of the offense. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). We assume "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989).

Under Minn. Stat. § 169A.20, subd. 1(1) (2012), "[i]t is a crime for any person to . . . be in physical control of any motor vehicle . . . when the person is under the influence of alcohol." O'Farrell concedes that she was in physical control of her vehicle,[1] but argues the state did not prove that her alcohol consumption impaired her ability to physically control her vehicle. The plain language of the statute does not support this argument, and O'Farrell cites no case law applying the statute in the manner she advocates. The district court instructed the jury to first independently determine whether

---

[1] *See, e.g., State v. Starfield*, 481 N.W.2d 834, 838 (Minn. 1992) (defendant in physical control of car stuck in ditch with keys in driver's pocket); *State, Dep't of Pub. Safety v. Juncewski*, 308 N.W.2d 316, 318-20 (Minn. 1981) (defendant in physical control when seated in driver's seat, slumped over steering wheel, parked on the side of the road with the key in the ignition).

3

O'Farrell was in physical control of her vehicle and then decide whether she was under the influence of alcohol at that time. *See* 10A *Minnesota Practice*, CRIMJIG 29.02 (2006). O'Farrell did not object to this instruction at trial and does not challenge it on appeal. Accordingly, we reject O'Farrell's novel suggestion that the state is required to prove that a driver's alcohol impairment prevents her from being able to physically control a vehicle.

We next consider whether sufficient evidence supports the jury's finding that O'Farrell was under the influence of alcohol at the time she was discovered in her vehicle. A person is under the influence when he is so affected by alcohol "as not to possess that clearness of intellect and control of himself that he otherwise would have." *State v. Elmourabit*, 373 N.W.2d 290, 293 (Minn. 1985) (quotation omitted). The state can prove this "by showing the amount of liquor consumed (either by witnesses or chemical tests), or by evidence of outward manifestations of intoxication, or by a combination of both." *Id.*

A.D. testified that O'Farrell was "stumbling back and forth" and "staggering" as she left the bar. He also described how O'Farrell was so intoxicated that night that he found her lying on the floor of the bar, and he had to help her stand up. Officer Ellis testified that O'Farrell's breath smelled of alcohol, her eyes were bloodshot, and her fine motor skills were "very slow." When Officer Ellis asked O'Farrell for her driver's license, she repeatedly handed her a variety of credit cards, believing they were her driver's license. Officer Ellis also testified that the results of the HGN test were consistent with O'Farrell being under the influence. Finally, the jury reviewed video

4

recordings made in the squad car and at the law-enforcement center, including footage of O'Farrell staggering and vomiting into a garbage can. On this record, we conclude there was sufficient evidence to prove O'Farrell was under the influence of alcohol when she was found in physical control of her vehicle.

**II.    O'Farrell was not denied a fair trial by evidentiary errors or prosecutorial misconduct.**

O'Farrell contends that the following errors entitle her to a new trial: (1) the prosecutor's elicitation of and reference to inadmissible character evidence, (2) the prosecutor's elicitation of and reference to unqualified expert testimony, (3) statements in the prosecutor's closing argument that misstated the law, and (4) statements in the prosecutor's closing argument that were aimed at inflaming the passions and prejudices of the jury.

Because O'Farrell did not object to any of these claimed errors at trial, she must establish (1) error, (2) that is plain, and (3) affects her substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). If she satisfies all three prongs, we will assess whether the error must be addressed to ensure the fairness and integrity of the judicial proceeding. *Id.* An error is plain if it was "clear" or "obvious." *State v. Strommen*, 648 N.W.2d 681, 688 (Minn. 2002) (quotation omitted). This often means that the error contravenes case law, a rule, or a standard of conduct. *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). An error affects a substantial right if it is prejudicial, meaning there is a reasonable likelihood that the error substantially affected the verdict. *Strommen*, 648 N.W.2d at 688.

O'Farrell concedes that each claimed error, individually, is insufficient to warrant a new trial. Even if errors considered individually may not merit a new trial, in certain situations the cumulative effect may require reversal and the granting of a new trial. *State. v. Valentine*, 787 N.W.2d 630, 642 (Minn. App. 2010) (citing *State v. Erickson*, 610 N.W.2d 335, 340-41 (Minn. 2000)), *review denied* (Minn. Nov. 16, 2010). A new trial is warranted "only if the misconduct, when considered in light of the whole trial, impaired the defendant's right to a fair trial." *State v. Mayhorn*, 720 N.W.2d 776, 785 (Minn. 2006) (quotation omitted). We examine whether the errors seriously affected the fairness, integrity, or public reputation of judicial proceedings before granting relief. *State v. Crowsbreast*, 629 N.W.2d 433, 437 (Minn. 2001).

**Character evidence**

Evidence of other crimes or bad acts is not admissible to prove that a defendant acted in conformity with his character. Minn. R. Evid. 404(b). On direct examination, the prosecutor asked A.D. if he had seen O'Farrell impaired "[v]ery often." A.D. responded, "I'd say more than the majority of the time when she comes to the Underground she becomes impaired or is impaired." O'Farrell argues that this testimony constitutes inadmissible evidence of prior bad acts introduced for "the illegitimate purpose of showing Ms. O'Farrell was likely intoxicated at the time of the present incident." The state argues that this testimony shows A.D. was familiar enough with O'Farrell to tell when she is under the influence of alcohol.

We need not decide whether A.D.'s testimony was character evidence. Even if A.D.'s testimony was inadmissible, O'Farrell cannot establish that the error affected a

6

substantial right. A.D.'s statement about O'Farrell's past instances of impairment was a small portion of his testimony. A.D.'s extensive testimony about O'Farrell's impairment on the evening in question is consistent with the testimony of Officers Hoppe and Ellis. And the prosecutor's single reference to the challenged statement in its closing argument did not highlight this evidence. In the face of overwhelming evidence of O'Farrell's intoxication, we cannot conclude that A.D.'s reference to prior incidents of intoxication prejudiced O'Farrell's substantial rights.

**Expert testimony**

An expert witness may testify as to opinions that "will assist the trier of fact to understand the evidence or to determine a fact in issue." Minn. R. Evid. 702. An expert must be qualified to testify based on his or her "knowledge, skill, experience, training, or education." *Id.*

Officer Ellis testified that the HGN test identifies, with approximately 70% accuracy, whether a person has an alcohol-concentration level over .10. Officer Ellis stated that she learned this statistic during her law-enforcement training. When asked if the HGN test can determine whether a driver's alcohol-concentration level is above .08 with more than 70% accuracy, Officer Ellis responded, "I would assume by mathematics that it would be a little bit higher."

O'Farrell argues that this testimony amounted to unqualified expert opinions, and "[t]here was no indication that the officer had any foundational knowledge or training regarding the statistical accuracy of the HGN [test]." We disagree. Officer Ellis's first statement did not express an expert opinion; it merely recited a statistic she learned

7

during her HGN-test training. Officer Ellis's accompanying testimony about the source of her training provided the proper foundation, and admitting the statistical accuracy of the test was not plain error. And Officer Ellis's second challenged statement—that she assumed the HGN test would predict a .08 alcohol-concentration level with more than 70% accuracy—cannot be construed as an expert opinion. The statistic was, in Officer Ellis's own words, based on a mathematical inference, not specialized training or experience. On this record, we conclude that admission of this second statement regarding the HGN test's accuracy was not plain error.

**Closing argument equating impairment, intoxication, and drunkenness**

A prosecutor commits misconduct by materially misstating the law in closing argument. *See Strommer*, 648 N.W.2d at 689-90. O'Farrell asserts that the prosecutor did so by conflating the legal meaning of impairment, intoxication, and drunkenness during her rebuttal argument:

> Sitting in a car with the keys and the motor running while you are—and I don't care what you want to call it—impaired, intoxicated—those are the same thing. Impaired, intoxicated, drunk—I can think of a whole bunch of other terms for it. They all mean the same thing. You may call it driving while intoxicated; you may call it driving while impaired; I may call it driving while under the influence. But it's all the same."

We are not persuaded. First, the prosecutor's argument merely noted that the various terms are synonymous in common usage. Second, as the state correctly points out, the law often uses these terms interchangeably. *See, e.g.*, *Starfield*, 481 N.W.2d at 837-38 (using terms "drunk driver," "drunken driver," "intoxicated person" interchangeably in discussing policy behind physical-control element of DWI offense).

8

Finally, the jury instructions directed the jury to disregard any attorney's statement of the law that differed from the law presented in the instructions. We presume that a jury follows the district court's instructions. *State v. Taylor*, 650 N.W.2d 190, 207 (Minn. 2002). Nothing in the prosecutor's closing argument amounted to an exhortation to disregard the law as presented in the instructions. Accordingly, we discern no error, plain or otherwise.

**Closing argument aimed at inflaming the passions of the jury**

Prosecutors have "considerable latitude" during closing arguments and are "not required to make a colorless argument." *State v. Ives*, 568 N.W.2d 710, 714 n.1 (Minn. 1997). Even if some aspects of an argument seem out-of-bounds, "it is normally regarded as harmless error unless the misconduct played a substantial part in influencing the jury to convict the defendant." *State v. Walsh*, 495 N.W.2d 602, 607 (Minn. 1993). At the same time, the state's argument should not seek to inflame or prejudice the jury against the defendant by making improper assertions. *Id.* at 606-07.

O'Farrell argues that the prosecutor committed misconduct by describing why the law prohibits being in physical control of a vehicle while under the influence of alcohol. In describing the physical-control element of the offense, the prosecutor stated, "So why is physical control of a motor vehicle illegal? Because it's dangerous. There were over 3500—." O'Farrell immediately objected, and the prosecutor refocused her argument. The fact that the objection occurred before the prosecutor completed her remark renders its admission harmless error, if an error at all.

O'Farrell next asserts that the prosecutor attempted to inflame the jury's passions by arguing that physical control of a vehicle is criminalized because "law enforcement cannot afford to wait, to stand back and wait for a drunk driver to put that car into gear and step on the accelerator." We disagree. It is not unreasonable for the state to explain why a driver can be charged with DWI—commonly understood to be a driving offense— when the person did not operate a vehicle. And the state's substantive analysis is consistent with existing case law. *See, e.g., Starfield*, 481 N.W.2d at 837 (explaining that "the purpose of the offense is to 'enable the drunken driver to be apprehended before he strikes'" (citation omitted)); *Juncewski*, 308 N.W.2d at 319-20 (discussing how physical-control offense is meant to function as a preventative measure). Because there was a reasonable basis to address the rationale behind the law, apart from inflaming the passions of the jury, we discern no plain error.

Lastly, O'Farrell contends that the prosecutor's assertion that O'Farrell and the public "got lucky" because officers reached her before she had the chance to drive and harm someone improperly appealed to the jury's passion. Closing arguments must be limited to facts in evidence and the reasonable inferences flowing therefrom. *State v. Wahlberg*, 296 N.W.2d 408, 419 (Minn. 1980). It is reasonable to infer from the substantial evidence of O'Farrell's impairment that she could have harmed someone if she had driven her car that night. But the comment that the public at-large "got lucky" comes close to insinuating that, but for police intervention, O'Farrell would have harmed others. Nonetheless, given the overwhelming evidence of O'Farrell's impairment, we discern no prejudice.

Because we have found no prejudicial evidentiary error or prosecutorial misconduct, we need not decide whether the cumulative impact of claimed errors requires a new trial.

**Affirmed.**