*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0854**

State of Minnesota,
Respondent,

vs.

Rodney Cap McCowan,
Appellant.

**Filed February 23, 2015
Affirmed
Reilly, Judge**

Ramsey County District Court
File No. 62-CR-13-7833

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John Choi, Ramsey County Attorney, Thomas R. Ragatz, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Melissa Sheridan, Assistant Public Defender, Eagan, Minnesota (for appellant)

Considered and decided by Reilly, Presiding Judge; Stauber, Judge; and Chutich, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REILLY**, Judge

Appellant Rodney McCowan challenges his convictions of terroristic threats and domestic assault by strangulation. McCowan claims that the district court erroneously

allowed prejudicial evidence during the trial, and that this error warrants a reversal of his convictions and a new trial. Because the district court did not err, we affirm.

## FACTS

On October 8, 2013, McCowan lived in a St. Paul apartment with four of his family members—K.M.H., D.W., K.T.H., and S.W. During the morning of October 8, a dispute arose between McCowan and his then 16-year-old grandnephew, S.W. McCowan accused S.W. of using his cologne and taking his belongings. S.W. and McCowan started arguing in S.W.'s bedroom. Eventually, the argument moved to the apartment's living room. S.W. claimed that McCowan swung at him, but he was able to duck and punched McCowan in self-defense. McCowan then pushed S.W. down onto a chair and got on top of him. McCowan placed his hands around S.W.'s neck and started to strangle him. S.W. tried calling for his mother, but he was unable to breath. S.W.'s mother, sister, and grandmother eventually heard S.W. and came to the living room. They attempted to get McCowan off S.W.

McCowan then let go of S.W. and started to leave the apartment. S.W. continued to yell at McCowan. McCowan told S.W. that "he had a bullet with [his] name on it." The neighbors called the police, and the police arrived shortly thereafter. Police officers took pictures of S.W.'s injuries. S.W. had cuts and scratches on his neck from where McCowan assaulted him and an injury to his foot. Officers found a locked pistol case and permit to carry in McCowan's belongings.

Respondent State of Minnesota charged McCowan with domestic assault by strangulation under Minn. Stat. § 609.2247, subd. 2 (2012), and later amended the

2

complaint to add the charge of terroristic threats in violation of Minn. Stat. § 609.713, subd. 1 (2012). A jury trial began on January 2, 2014.

At trial, McCowan testified that S.W. initiated the dispute when S.W. started head butting him. He also testified that he only had his right hand around S.W.'s neck and that he "didn't put any amount of pressure on [S.W.'s] neck at all." K.M.H. and K.T.H. refuted this assertion. Both testified that they saw McCowan with two hands around S.W.'s neck, strangling him.

During K.T.H.'s testimony, the district court gave the jury a cautionary instruction regarding previous bad acts by McCowan. Before the start of trial, the district court, the prosecutor, and the defense discussed the admissibility of relationship evidence under Minn. Stat. § 634.20 (2012). The state moved to introduce evidence of prior domestic conduct by introducing testimony through S.W. and other family members of previous incidents of physical assault that were consistent with strangulation. The district court allowed the evidence and instructed the prosecutor to let him know when he was introducing the testimony so that the district court could give the jury a cautionary instruction.

K.T.H. testified about an altercation that occurred around six years earlier involving both S.W. and McCowan. K.T.H. stated that, when S.W. was around ten years old, she learned that McCowan choked S.W. for disobeying him. K.T.H. testified that S.W. told her that McCowan started choking him after he refused to come back inside the building. McCowan did not deny that an altercation occurred, but he claimed that he had his forearm on S.W.'s chest and not his neck. K.T.H. also testified about an incident that

3

occurred the week before the assault involving a dispute between McCowan and S.W. over a bottle of soda. K.T.H. stated that McCowan became irritated with S.W. for drinking McCowan's soda. While arguing about the soda, K.T.H. and S.W. left the apartment and McCowan followed them into the hallway. K.T.H. told McCowan that they would replace the soda, but McCowan continued to argue with them about the soda.

The jury found McCowan guilty of both charges. The district court sentenced McCowan on the terroristic threats conviction, stayed the imposition, placed McCowan on probation for five years, and ordered McCowan to serve 30 days in jail. McCowan appeals.

## DECISION

## I.

McCowan maintains that the district court committed reversible error by admitting evidence of bad acts as relationship evidence under Minn. Stat. § 634.20. We review a district court's admission of evidence under section 634.20 for an abuse of discretion. *State v. McCoy*, 682 N.W.2d 153, 161 (Minn. 2004); *State v. Lindsey*, 755 N.W.2d 752, 755 (Minn. App. 2008), *review denied* (Minn. Oct. 29, 2008). Absent a clear abuse of discretion, this court will not reverse a district court's evidentiary ruling. *State v. Smith*, 825 N.W.2d 131, 137 (Minn. App. 2012), *review denied* (Minn. Mar. 19, 2013). "It is the appellant's burden to establish that the district court abused its discretion and that, as a result, appellant was prejudiced." *Id.*

McCowan claims that the district court abused its discretion when it allowed witnesses to testify that, when S.W. was around ten years old, McCowan choked him.

4

McCowan also challenges the introduction of a witness's testimony describing an incident where McCowan became irritated with S.W. when S.W. drank McCowan's soda.

Generally, evidence of prior crimes or bad acts, known as *Spreigl* evidence, is not admissible as character evidence to show that the person acted in conformity with that character. Minn. R. Evid. 404(b); *see generally State v. Spreigl*, 272 Minn. 488, 139 N.W.2d 167 (Minn. 1965). But under Minn. Stat. § 634.20,

> [e]vidence of similar conduct by the accused against the victim of domestic abuse . . . is admissible unless the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The district court may allow similar-conduct evidence to "demonstrate the history of the relationship between the accused and the victim of domestic abuse" and to place the offense in the appropriate context. *State v. Word*, 755 N.W.2d 776, 784 (Minn. App. 2008); *see also McCoy*, 682 N.W.2d at 159-60 ("A defendant is aware that his prior relationship with the victim, particularly in so far as it involves ill will or quarrels, may be presented against him.).

Section 634.20 "specifically provides for the admission of evidence of 'similar conduct' by the accused unless it fails to meet a balancing test that considers whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice." *McCoy*, 682 N.W.2d at 159. The district court found probative value in the prior incidents and instructed counsel

> [a]s long as this information related to the relationship between Mr. McCowan and the alleged victim, and only

5

> witnesses of these prior incidents, current incidents would be able to testify to these prior incidents that related to the same two individuals. I believe that is probative, and more probative than prejudicial. So I will allow it.

McCowan first contends that the probative value of the prior acts evidence was low because three family members witnessed and testified to the actual altercation. Consequently, he asserts what happened during the altercation was not in dispute. We disagree.

The record shows that the motivation for the assault—self-defense or retaliation—was disputed. Although the witness testimony established that an assault occurred, McCowan claimed self-defense. By allowing witnesses to testify about a previous strangulation and argument, these acts provided probative value in explaining the history and nature of the relationship. *See State v. Williams*, 593 N.W.2d 227, 236 (Minn. 1999) ("[W]e have on numerous occasions recognized the inherent value of evidence of past acts of violence committed by the same defendant against the same victim."), *cert. denied*, 528 U.S. 874, 120 S. Ct. 180 (1999). Additionally, these prior bad acts are probative because they assisted the jury by providing context to how an argument over cologne quickly escalated to an assault.

Second, McCowan claims that the danger of unfair prejudice was high. Because almost every admission of a prior bad act will be prejudicial, the inquiry is whether the evidence "is not merely damaging evidence, even severely damaging evidence; rather, unfair prejudice is evidence that persuades by illegitimate means, giving one party an unfair advantage." *State v. Bell*, 719 N.W.2d 635, 641 (Minn. 2006).

6

The danger of unfair prejudice in this case was low because the district court gave cautionary instructions to the jury. *See State v. Waino*, 611 N.W.2d 575, 579 (Minn. App. 2000) (stating that the prejudicial effect of admitting relationship evidence can be mitigated by a cautionary instruction); *Lindsey*, 755 N.W.2d at 757 (noting that cautionary instructions "lessen[] the probability of undue weight being given by the jury to the evidence"). Appellate courts assume that juries follow instructions given by the district court and properly consider evidence. *State v. Vang*, 774 N.W.2d 566, 578 (Minn. 2009).

The district court instructed the jury of the following before the state elicited the relationship evidence testimony:

> THE COURT: Members of the jury, the state is about to introduce evidence of conduct by the defendant on a previous occasion. This evidence is being offered to you for the limited purpose of demonstrating the nature and extent of the relationship between the defendant and [S.W.]. In order to assist you in determining whether the defendant committed those acts with which the defendant is charged in the complaint. The defendant is not being tried for and may not be convicted of any behavior other than the charged offenses. You are not to convict him, convict the defendant on the basis of his prior conduct. To do so might result in unjust double punishment.

The district court gave a similar instruction before closing arguments. The record reflects that evidence of the prior bad acts was not unduly prejudicial.

Finally, even if we were to agree that the district court erroneously admitted the relationship evidence, McCowan cannot establish that the error prejudicially affected the verdict. "When a trial court has erroneously admitted other crimes evidence, we must

7

determine whether there is a reasonable possibility that the wrongfully admitted evidence significantly affected the verdict." *State v. Courtney*, 696 N.W.2d 73, 84 (Minn. 2005).

First, three of S.W.'s family members witnessed the incident and consistently testified that McCowan strangled S.W. Photos of S.W.'s injuries were submitted to the jury. These photos document scratches, cuts, and scars on S.W.'s neck caused by McCowan's hands and nails. Second, although the state mentioned the prior bad acts in its closing argument, they were briefly discussed and used to refute the claim of self-defense. Lastly, the district court gave two cautionary instructions regarding the relationship evidence. *See State v. Matthews*, 800 N.W.2d 629, 634 (Minn. 2011) (concluding that testimony did not significantly impact the verdict because the manner in which the testimony was presented was brief; the testimony was not highly persuasive of guilt and other, strong evidence established guilt; the defense counsel countered the testimony in closing argument; and the prosecutor's use of the testimony was limited).

Thus, in weighing the probative value of the prior acts against the danger of unfair prejudice, the prior acts were more probative than prejudicial. Accordingly, the district court did not abuse its discretion in allowing the prior acts as relationship evidence under Minn. Stat. § 634.20.

## II.

Next, McCowan asserts that the district court committed reversible plain error when it admitted evidence of McCowan's bad character due to his anger issues.[1]

---

[1] McCowan's pro se supplemental brief claims that he does not have anger issues. But because the brief makes no legal arguments, we will not consider it on appeal. *See*

McCowan claims that the exchange during cross-examination of K.T.H. by McCowan's counsel constituted plain error:

> [Counsel for Defense] But when Mr. McCowan made the statement you've testified to about something about a bullet, you said what in response?
> [K.T.H.] I said "you don't mean that." And I told him, I said, "you don't mean that." I said "we're family." That's exactly what I told him.
> [Counsel for Defense] And your belief is he didn't mean it?
> [K.T.H.] I actually don't think he meant it. To be honest with you. I really don't think he meant it. He just probably said it out of anger. Because he does have an anger problem. Yes, he does.
> [Counsel for Defense] And then since that day when he left he hasn't been back; right?
> [K.T.H.] No.

McCowan also challenges the following testimony elicited by the prosecution from a responding officer:

> [Prosecutor] And did she indicate whether or not they reported that to the police at the time?
> [Officer] She said they did not.
> [Prosecutor] And why not? Did she say?
> [Officer] She explained to me that she wanted to keep that incident in the family so that [McCowan] could get help for his anger.
> [Prosecutor] Did you talk to [K.T.H.] as well?
> [Officer] I did.
> [Prosecutor] Did she give you a similar account?
> [Officer] She did.
> [Prosecutor] Did she talk about what she was concerned was happening with Mr. McCowan and what he was trying to do to [S.W.]?

---

*Schoepke v. Alexander Smith & Sons Carpet Co*., 290 Minn. 518, 519–20, 187 N.W.2d 133, 135 (1971) (declaring that argument based on "mere assertion and not supported by any argument or authorities . . . is waived and will not be considered on appeal unless prejudicial error is obvious on mere inspection").

> [Officer] Yes. She had mentioned that [McCowan] had had these anger issues his whole life. And they were getting worse the older that he got. And that she just wanted him to get help.

Again, there was no objection by McCowan's counsel.

We review unobjected-to testimony under the plain-error standard. *State v. Strommen*, 648 N.W.2d 681, 686 (Minn. 2002). In applying the plain-error analysis, this court will reverse only if the district court (1) committed an error; (2) that was plain; (3) that affected the defendant's substantial rights. *State v. Crowsbreast*, 629 N.W.2d 433, 437 (Minn. 2011). If all three prongs are met, we will continue our review and address the error only if it seriously affects the fairness and integrity of the judicial proceedings. *State v. Kuhlmann*, 806 N.W.2d 844, 852-53 (Minn. 2011).

Although we typically address the first two prongs before addressing the third, an appellate court has the discretion to proceed directly to the third prong to determine whether the defendant's rights were substantially affected. *State v. Goelz*, 743 N.W.2d 249, 258 (Minn. 2007); *see also State v. Atkinson*, 774 N.W.2d 584, 596 (Minn. 2009) (proceeding directly to the third prong and considering only whether the alleged plain error was prejudicial). Moreover, we note that the prosecutor did not initially elicit the testimony relating to McCowan's anger issues. Rather, this testimony first came out during the cross-examination of M.T.H. by defense counsel, and the record shows that the "anger" testimony was elicited in an attempt to prove that McCowan was not serious about his bullet threat.

The third prong is satisfied "if the error was prejudicial and affected the outcome of the case." *State v. Griller*, 583 N.W.2d 736, 741 (Minn. 1998). McCowan claims that

10

his rights were substantially affected because "[a]dmitting the character evidence allowed the state to make this case about McCowan's character as a man with an anger problem who likely acted in conformity with that character trait during the incident in question." Specifically, McCowan cites to the prosecutor's closing argument:

> What happened on October 8th is not about the defendant being scared and trying to protect himself from an attack. It's not about self-defense. It's about the defendant being angry. He was angry with [S.W.]. He felt that [S.W.] was messing with his stuff. If he assumes [S.W.'s] taking all his stuff, even though he doesn't know that. When I tried to ask him the question "did you ever find [S.W.]with that?" He refuses to answer my question.
>
> He even gets angry about little things like a bottle of pop. He's living with his mother who's paying the rent. And he gets mad because he thinks [S.W.] drank a bottle of pop that belonged to him, even though they said they would replace it. And he won't let it go. His mother talked about, he just wouldn't let it go. He's following us in the hallway still, arguing about this bottle of pop.
>
> It's about him being angry. It's about his anger issues that his own sister testified that he has. Oh, yeah, he clearly has anger issues. He over reacts. And you saw some of that in the way he reacted in his testimony. What he wanted to do was he's angry and he wanted to punish [S.W.] for what he felt [S.W.], how [S.W.] was wronging him. He wasn't trying to defend himself. He wasn't trying to avoid the situation. And it wasn't self-defense.
>
> . . . .
>
> You know a little bit about his history in terms of his, he's got anger issues. You know about the history in terms of the way he reacts to little things when it comes to [S.W.], like a bottle of pop.
>
> Given all of that backdrop it gives you some sense of what might happen in the current situation he's charged with.

Although the prosecutor's closing did improperly attack McCowan's character, when viewed against the cautionary instructions given by the district court and the

11

strength of the evidence against him, the reference to character evidence in the prosecutor's closing argument did not affect the outcome of the trial. At the start of trial, the district court instructed the jury that "statements, comments and arguments of the attorneys are not evidence, and are not to be considered as such by you." Before closing arguments, the district court again instructed the jury that "[a]rguments or statements by the lawyers are not evidence." And a district court's failure to sua sponte strike or instruct on evidentiary issues generally is not reversible error. *See, e.g.*, *Williams*, 593 N.W.2d at 237 (holding that a failure to give limiting instructions on character evidence absent a request is not reversible error); *see also State v. Hagen*, 361 N.W.2d 407, 413 (Minn. App. 1985) ("[U]nintended responses under unplanned circumstances ordinarily do not require a new trial."), *review denied* (Minn. Apr. 18, 1985).

Accordingly, the district court did not commit reversible error when it did not sua sponte strike the testimony relating to an anger issue from the record.

**Affirmed.**