*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0093**

State of Minnesota,
Respondent,

vs.

Sherif Mohamed Abdeltawwab,
Appellant.

**Filed January 22, 2024**
**Affirmed in part, reversed in part, and remanded**
**Wheelock, Judge**

Dakota County District Court
File No. 19HA-CR-22-945

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Kathryn M. Keena, Dakota County Attorney, Heather D. Pipenhagen, Assistant County Attorney, Hastings, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, John Donovan, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Smith, Tracy M., Presiding Judge; Gaïtas, Judge; and Wheelock, Judge.

**NONPRECEDENTIAL OPINION**

**WHEELOCK**, Judge

Appellant challenges his convictions for aggravated first-degree witness tampering, first-degree witness tampering, and stalking as well as his sentences for aggravated first-degree witness tampering and stalking. He argues that the district court (1) provided

clearly erroneous jury instructions for aggravated first-degree witness tampering and stalking, (2) erred by sentencing him for both aggravated first-degree witness tampering and stalking, and (3) erred by entering convictions for both aggravated first-degree witness tampering and first-degree witness tampering. We affirm in part because any error in the district court's jury instructions either did not affect appellant's substantial rights or was not plain. We reverse in part because the district court erred in two ways: by sentencing appellant for both aggravated first-degree witness tampering and stalking and by entering a conviction for a lesser included offense. And we remand for the district court to resentence appellant and to amend the warrant of commitment.

**FACTS**

Respondent State of Minnesota charged appellant Sherif Mohamed Abdeltawwab with aggravated first-degree witness tampering, first-degree witness tampering, domestic assault by strangulation, and stalking in relation to three incidents occurring between Abdeltawwab and his girlfriend, H.B. At trial, the jury received evidence relating to the three incidents. The facts here are taken from trial evidence.

On October 31, 2021, H.B. went to her friend's apartment and reported that she needed refuge from Abdeltawwab, who had abused her earlier that day. H.B. was bruised and had dried blood around her face. H.B. asked her friend's boyfriend, who was in the friend's apartment, to go with her to Abdeltawwab's apartment in the same building so she could retrieve her things. After H.B. collected her belongings, Abdeltawwab followed her out of his apartment. He was angry and aggressive, and the friend's boyfriend left the building running and called 911 because Abdeltawwab tried to physically assault him. The

2

friend's boyfriend testified to all of these circumstances, but in their testimonies, Abdeltawwab and H.B. denied that Abdeltawwab had physically abused H.B.

On March 27, 2022, H.B. called 911 and reported that she had an emergency at Abdeltawwab's apartment building. She reported that a man had just beaten her and thrown her out of the apartment. The man, later identified as Abdeltawwab, left her naked in the hallway without clothes or shoes. H.B. reported that Abdeltawwab had a knife and that he had used it that night. While still on the phone with the emergency dispatcher, H.B. said, "Don't hurt me. I have my stuff in there," and, "You threw me out naked . . . . Please, just a jacket." H.B. ended the 911 call and did not answer when the dispatcher attempted to call her back. Officers responding to the scene discovered H.B. standing in the apartment hallway wearing only jeans and a winter coat, with nothing on underneath. Officers observed red marks on her neck as well as facial injuries. One officer testified that H.B. reported that

> Mr. Abdeltawwab had become upset with her because she was supposed to testify in a criminal trial that was supposed to be starting the next day involving him and her. And he had gotten to the point that he was so upset, he grabbed her by her neck and pushed her over some tables in their living room and ended up squeezing her neck with both hands to the point that she could not scream and became dizzy and told me that she saw stars.

The officer also testified that H.B. reported that Abdeltawwab said to her, "I'm going to jail because of you. I don't care if I kill you. My life is over because you're ending my life." At trial here, H.B. denied that any threats or physical abuse occurred during this incident.

On June 21, 2022, officers responded to a call reporting a domestic disturbance between a man and woman arguing in a parking lot. The caller reported that the woman was running and screaming for help while the man was chasing her. Responding officers found H.B., who appeared to have been assaulted—she had bruises and red marks on her neck and swelling on her face. Officers believed these to be fresh injuries. A domestic-abuse no-contact order (DANCO) prohibiting Abdeltawwab from having contact with H.B. was in place on the night of this incident. In their testimonies, H.B. and Abdeltawwab denied that Abdeltawwab physically injured H.B. on this occasion.

After trial, the district court instructed the jury on the elements of the offenses. As to aggravated first-degree witness tampering, the district court instructed the jury:

> Under Minnesota law, whoever causes, or by means of an implicit or explicit credible threat, threatens to cause great bodily harm or death to another while intentionally preventing or dissuading, or attempting to prevent or dissuade, a person who is or may become a witness from attending or testifying at any criminal trial or proceeding . . . is guilty of a crime.

It then went on to define the "threat" element: "[T]he Defendant by means of an implicit or explicit credible threat threatened to cause death or bodily harm to another in the course of tampering with the witness. 'Bodily harm' means physical pain or injury, illness, or any impairment of a person's physical condition."

The district court also instructed the jury on stalking, providing that a guilty verdict for stalking requires proof of two or more criminal acts within a five-year period. The court explained that the state would try to meet the element by proving that three domestic

4

assaults occurred on October 31, March 27, and June 21 and that a DANCO violation occurred on June 21. The district court then instructed the jury:

> [T]he crime of stalking is proven only if you find the Defendant committed two or more criminal acts within that five-year period. When more than two criminal acts are alleged, in order to find that the State has satisfied this element, you must unanimously find that at least two criminal acts were proven beyond a reasonable doubt, but you need not agree as to which criminal acts were proven beyond a reasonable doubt.

The jury found Abdeltawwab guilty of aggravated first-degree witness tampering, first-degree witness tampering, and stalking and acquitted him of domestic assault by strangulation.[1]

At the sentencing hearing, the district court convicted Abdeltawwab of stalking and aggravated first-degree witness tampering. It pronounced the stalking sentence first, which allowed the stalking conviction to be included in the criminal-history-score calculation for the aggravated-first-degree-witness-tampering sentence. The district court did not state that it would also enter a conviction for the first-degree-witness-tampering charge, but the warrant of commitment reflects that it did. The district court sentenced Abdeltawwab to executed terms of imprisonment of 98 months for aggravated first-degree witness tampering and 18 months for stalking, to be served concurrently.

Abdeltawwab appeals.

---

[1] The state did not charge the DANCO violation as a separate offense and used evidence of the violation only to prove stalking beyond a reasonable doubt.

**DECISION**

Abdeltawwab raises three challenges on appeal. First, he argues that the district court plainly erred when it instructed the jury on aggravated first-degree witness tampering and stalking and that the plain errors affected his substantial rights. Second, he argues that the district court erred by sentencing him for both aggravated first-degree witness tampering and stalking because the two convictions arose out of the same behavioral incident. Third, he argues that his conviction for first-degree witness tampering should be vacated because it is a lesser included offense of aggravated first-degree witness tampering. We address each argument in turn.

**I.     The alleged errors in the jury instructions do not warrant reversal.**

Abdeltawwab maintains that the district court erred in its instructions to the jury for two separate offenses—aggravated first-degree witness tampering and stalking. Because Abdeltawwab did not object to the district court's instructions at trial, we review his challenge under the plain-error standard. *State v. Kelley*, 855 N.W.2d 269, 273 (Minn. 2014). To prevail under the plain-error standard, "the appellant must show that there was (1) an error; (2) that is plain; and (3) the error must affect substantial rights." *Id.* at 273-74. If the appellant meets that burden, this court will correct the error only if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *State v. Crowsbreast*, 629 N.W.2d 433, 437 (Minn. 2001) (quotation omitted). We address each allegedly erroneous instruction in turn.

6

###     A.     Aggravated First-Degree Witness Tampering

Abdeltawwab asserts that the district court's instructions for aggravated first-degree witness tampering misstated the law by providing the jury with the instructions for "bodily harm" rather than "great bodily harm." The state agrees that the instruction was plainly erroneous but argues that the error did not impact Abdeltawwab's substantial rights.

In order for a jury to find a person guilty of aggravated first-degree witness tampering, it must find that the person "cause[d] or, by means of an implicit or explicit credible threat, threaten[ed] to cause *great bodily harm* or death to another in the course of [intentionally] committing" certain enumerated acts relating to a witness's decision to testify at trial. Minn. Stat. § 609.498, subd. 1b(a) (2020) (emphasis added). "Great bodily harm" is defined as "bodily injury which creates a high probability of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily harm." Minn. Stat. § 609.02, subd. 8 (2020). The district court did not provide the definition for "great bodily harm"[2] to the jury. Instead, it instructed the jury on "bodily harm," which

---

[2] We observe that the district court used the model jury instructions to instruct the jury and that the relevant instruction contains the following language: "[T]he defendant . . . by means of an implicit or explicit credible threat, threatened to cause death or *bodily harm* to another." 10A *Minnesota Practice*, CRIMJIG 21.20 (2015) (emphasis added). The model jury instruction's use of the term "bodily harm" instead of "great bodily harm" as set forth in the relevant statute is an error in the model instruction. It appears to us that the erroneous instruction the district court used here is attributable to the omission of the term "great" from the model jury instructions. We note that the model jury instruction for aggravated first-degree witness tampering has been updated and renumbered, see 10A *Minnesota Practice*, CRIMJIG 29.33 (2023), but the language quoted above remains the same.

requires only "physical pain or injury, illness, or any impairment of physical condition." *Id.*, subd. 7 (2020). We agree that this was plainly erroneous.

We therefore consider whether the erroneous instruction affected Abdeltawwab's substantial rights. An error affects a defendant's substantial rights when "there is a reasonable likelihood that the absence of the error would have had a significant effect on the jury's verdict." *State v. Horst*, 880 N.W.2d 24, 38 (Minn. 2016) (quotation omitted). The threat element of first-degree aggravated witness tampering can be satisfied by proving that the defendant threatened the victim with "great bodily harm *or* death." Minn. Stat. § 609.498, subd. 1b(a) (emphasis added). Here, the state proved the threat element through the testimony of law enforcement that Abdeltawwab told H.B., "I'm going to jail because of you. I don't care if I kill you. My life is over because you're ending my life." Abdeltawwab threatened H.B. with death instead of great bodily harm. Therefore, we conclude that it is immaterial that the jury was instructed on bodily harm and not on great bodily harm.

### B. Stalking

Abdeltawwab argues that the district court also plainly erred in its stalking instructions by instructing the jury that it "need not agree as to which criminal acts were proven beyond a reasonable doubt." In order to satisfy the plain-error standard, a party must show that the error was plain, meaning that "it is clear or obvious, which is typically established if the error contravenes case law, a rule, or a standard of conduct." *State v. Webster*, 894 N.W.2d 782, 787 (Minn. 2017) (quotation omitted). Abdeltawwab's challenge fails to satisfy the plainness prong.

8

Minnesota Statutes section 609.749, subdivision 5(a) (2020), provides:

> A person who engages in stalking with respect to a single victim . . . which the actor knows or has reason to know would cause the victim under the circumstances to feel terrorized or to fear bodily harm and which does cause this reaction on the part of the victim, is guilty of a felony . . . .

"Stalking" means "two or more acts within a five-year period that violate or attempt to violate the provisions of any of the following or a similar law of another state, the United States, the District of Columbia, tribe, or United States territories." Minn. Stat. § 609.749, subd. 5(b) (2020). Among the offenses that could serve as predicate acts are domestic assault and DANCO violations. *Id.*, subd. 5(b)(5), (16).

While it is true, as Abdeltawwab points out, that all elements of an offense must be proven beyond a reasonable doubt, "unanimity is not required with respect to the alternative means or ways in which the crime can be committed." *State v. Stempf*, 627 N.W.2d 352, 354-55 (Minn. App. 2001) (quotation omitted). And there is no authority establishing whether the "two or more prior acts" required to prove stalking are *elements* on which the jury must unanimously agree or whether they create alternate *means* of committing the offense.

Moreover, caselaw addressing similar statutes suggests that the jurors need not agree on the specific acts so long as they agree that "stalking" occurred beyond a reasonable doubt. For example, in cases in which a "past pattern" of abuse is an element of an offense, the supreme court has held that jurors need not unanimously agree as to which acts constituted the pattern. *State v. Kelbel*, 648 N.W.2d 690, 703 (Minn. 2002) (first-degree

9

murder based on a pattern of past child abuse); *Crowsbreast*, 629 N.W.2d at 439 (first-degree murder based on a pattern of past domestic abuse).

Abdeltawwab maintains that these cases do not apply because neither addresses the stalking definition. The ultimate inquiry in this case, however, is whether the district court *plainly* erred. In light of the past-pattern caselaw and the absence of any on-point authority relating to stalking, it is not clear or obvious that the district court erred when it instructed the jury that it need not agree on which two acts satisfied the stalking definition. Given the lack of clear authority, we cannot say that the district court plainly erred.

## II. The district court erred by sentencing Abdeltawwab for both aggravated first-degree witness tampering and stalking.

Abdeltawwab argues that the district court erred by sentencing him for both the aggravated-first-degree-witness-tampering and stalking convictions because the offenses arose out of a single behavioral incident. Minnesota law provides that, subject to limited exceptions, "if a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses." Minn. Stat. § 609.035, subd. 1 (2020). We review de novo whether a sentence violated section 609.035. *State v. Branch*, 942 N.W.2d 711, 713 (Minn. 2020). The state bears the burden to establish by a preponderance of the evidence that the conduct underlying the offenses is divisible. *State v. Williams*, 608 N.W.2d 837, 841-42 (Minn. 2000).

Ordinarily, the "determination of whether two or more crimes are part of a single behavioral incident requires examination of the time and place of the offenses and whether the defendant was motivated by an effort to obtain a single criminal objective." *State v.*

*Mullen*, 577 N.W.2d 505, 511 (Minn. 1998) (quotation omitted). But such an analysis is not possible under the circumstances present here because we cannot be certain about which of the possible predicate acts the jury relied on to find Abdeltawwab guilty of the stalking offense. More specifically, the stalking conviction was premised on at least two out of four possible acts: three instances of domestic assault and one DANCO violation. And one of the four possible predicate acts was the domestic assault on March 27, 2022, the same event that served as the basis for the witness-tampering crime. Our review leads us to conclude that these incidents were motivated by a single criminal objective—to cause harm or fear of harm or death to H.B.

The state maintains that because the jury could have relied on the October and June domestic assaults or the DANCO violation as the predicate acts, the district court's decision to sentence Abdeltawwab for both stalking and aggravated first-degree witness tampering is appropriate. But it is the state's burden to prove by a preponderance of the evidence that the underlying conduct for the convictions was not unified. *See Williams*, 608 N.W.2d at 841-42. And in the absence of any evidence regarding what conduct the jury relied on to find Abdeltawwab guilty of the stalking offense, the state cannot meet its burden. Thus, we reverse the sentence imposed for Abdeltawwab's stalking conviction. Because the district court assigned a point from the stalking conviction to the criminal-history score it used to calculate the first-degree-aggravated-witness-tampering sentence, we remand for a recalculation of that sentence.

11

**III.    The district court erred by entering convictions for both aggravated first-degree witness tampering and first-degree witness tampering.**

The parties agree that the district court erroneously entered convictions for both first-degree witness tampering and aggravated first-degree witness tampering. Minnesota law provides that a defendant may be convicted of the crime charged or an included offense, but not both. Minn. Stat. § 609.04, subd. 1 (2020). An offense is an included offense if it is "a lesser degree of the same crime." *Id.*, subd. 1(1). First-degree witness tampering is a lesser degree of aggravated first-degree witness tampering. Minn. Stat. § 609.498, subds. 1, 2 (2020). Thus, we reverse Abdeltawwab's conviction for first-degree witness tampering, leaving the guilty verdict intact, *see State v. LaTourelle*, 343 N.W.2d 277, 284 (Minn. 1984), and remand to the district court to amend the warrant of commitment.

**Affirmed in part, reversed in part, and remanded.**